[732 NYS2d 773]

In the Matter of NORMA MORGAN, Respondent, v CARLIN GRZESIK et al., Appellants.

Fourth Department, November 9, 2001

## APPEARANCES OF COUNSEL

*Koslosky & Koslosky,* Utica (*John Gregory Koslosky* of counsel), for infants.

*R. R. Sossen, Jr.,* Utica, for appellants.

*Jerome F. Zamorski,* New Hartford, for respondent.

*Eliot L. Spitzer, Attorney General,* Albany (*Laura Etlinger* of counsel), for State of New York, intervenor-respondent.

## OPINION OF THE COURT

Wisner, J.

■ ■ Family Court granted petitioner visitation with her grandchildren pursuant to Domestic Relations Law § 72 despite the opposition of respondent parents. On this appeal, we are asked to determine the constitutionality of Domestic Relations Law § 72 in light of the United States Supreme Court's decision in *Troxel v Granville* (530 US 57). *Troxel* held that, under the Due Process Clause of the Fourteenth Amendment of the US Constitution, there is a presumption that a fit parent's determination regarding visitation is in the best interests of the child and that, if that decision becomes subject to judicial review, "the court must accord at least some special weight to the parent's own determination" (*supra,* 530 US, at 70 [plurality opn]). Contrary to respondents' contentions, we conclude that *Troxel* does not call into question the facial validity of Domestic Relations Law § 72 and that the application of Domestic Relations Law § 72 to this case does not violate respondents' rights under the Due Process Clause.

I

Petitioner is the maternal grandmother of respondents' five children. The children reside with respondents and are all under the age of 11. Petitioner's close relationship with the children is undisputed. The relationship between petitioner and respondents, however, began deteriorating in the summer of 1999, and in October 1999 petitioner reported respondent father twice for child abuse. In the first of those reports, petitioner told child protective services that the father had beaten the two oldest children with a belt before putting them on the school bus. Petitioner then followed up that report by contacting a school social worker and neighbors to alert them of the situation. She also reported to the State Police that the father had threatened her on the telephone. Angered by petitioner's actions, respondents refused to allow petitioner any further contact with the children. Petitioner then commenced this proceeding seeking visitation pursuant to Domestic Relations Law § 72.

At the hearing on the petition, petitioner testified that she made the child abuse reports because she was concerned about the children's safety. Petitioner failed to call any witnesses from child protective services, however, and failed to establish the basis for the child abuse reports. Although respondents denied the accusations, they admitted that the children were physically punished and that the report concerning the school bus incident was investigated by child protective services and determined to be "indicated." Respondents opposed visitation because they feared what petitioner would say to the children about respondents. The Law Guardian recommended that petitioner have visitation with the children.

After an unsuccessful attempt to mediate a settlement, the court rendered its decision. The court first determined that petitioner has standing to seek visitation with her grandchildren, based on the existence of equitable circumstances. In making that determination, the court considered factors that included petitioner's close relationship with the children and the nature and basis of respondents' opposition to visitation. The court found that respondents' opposition was rooted in issues personal to the parties and not based upon concerns for the welfare of the children while the children are in petitioner's care. The court further found that, although petitioner has expressed negative feelings about respondents to others in the past, one of the two child abuse reports was indicated.

After determining that petitioner has standing to seek visitation, the court determined that such visitation is in the best

interests of the children. The court established a visitation schedule and ordered the parties not to make disparaging remarks about each other in the children's presence.

## II

■ Domestic Relations Law § 72 provides in relevant part: "Where either or both of the parents of a minor child, residing within this state, is or are deceased, or where circumstances show that conditions exist which equity would see fit to intervene, a grandparent or the grandparents of such child may apply * * * to the family court * * * and * * * the court, by order, after due notice to the parent or any other person or party having the care, custody, and control of such child * * * may make such directions as the best interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child." Respondents contend that, in light of *Troxel* (530 US 57, *supra*), the statute is unconstitutional on its face. We disagree.

In *Troxel*, paternal grandparents petitioned for visitation with their grandchildren under a statute permitting "any person [to] petition the court for visitation rights at any time" and authorizing visitation rights whenever "visitation may serve the best interest of the child" (Wash Rev Code § 26.10.160 [3]). The Superior Court of the State of Washington awarded more visitation than the mother had permitted voluntarily, and the mother appealed. The Court of Appeals of the State of Washington reversed and dismissed the petition (87 Wash App 131, 940 P2d 698). The Supreme Court of the State of Washington affirmed (137 Wash 2d 1, 969 P2d 21), holding that the statute unconstitutionally infringes on the fundamental right of parents under the Due Process Clause of the Fourteenth Amendment to rear their children. Although the United States Supreme Court affirmed, only Justice Souter in a concurring opinion agreed with the Supreme Court of the State of Washington that the statute was unconstitutional on its face. In Justice Souter's view, the Washington statute "sweeps too broadly" in authorizing "any person at any time to request (and a judge to award) visitation rights, subject only to the State's particular best-interests standard" (*supra*, 530 US, at 76-77). In the plurality opinion joined in by Chief Justice Rehnquist and Justices Breyer and Ginsburg, Justice O'Connor found the statute unconstitutional as applied (*supra*, 530 US, at 67) and wrote that, "[b]ecause much state-court adjudication in this context occurs on a case-by-case basis, we would be hes-

itant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter" (*supra,* 530 US, at 73). Justice Thomas, concurring in the judgment, agreed with Justice O'Connor that the statute was unconstitutional as applied, albeit for a different reason (*supra,* 530 US, at 80).

Domestic Relations Law § 72 is more narrowly drawn than the Washington statute. In contrast to the Washington statute, Domestic Relations Law § 72 is limited to grandparents. Additionally, the standing of grandparents is not automatic unless either or both of the parents of the grandchild have died. "In all other circumstances, grandparents will have standing only if they can establish circumstances in which equity would see fit to intervene" (*Matter of Emanuel S. v Joseph E.,* 78 NY2d 178, 181). In deciding that threshold question, the court is required to examine all the relevant facts, including "the nature and basis of the parents' objection to visitation" and "the nature and extent of the grandparent-grandchild relationship" (*Matter of Emanuel S. v Joseph E., supra,* at 182). We thus determine that Domestic Relations Law § 72 is not unconstitutional on its face.

### III

■ We now turn to the issue whether the application of Domestic Relations Law § 72 to this case violates respondents' rights under the Due Process Clause as interpreted by the United States Supreme Court in *Troxel.* The dispute between the parties in *Troxel* concerned the amount of visitation allowed to the grandparents (*supra,* 530 US, at 71 [plurality opn]). The trial court rejected the mother's proposal of limited visitation without giving that determination any weight whatsoever and indeed presumed that the grandparents' request should be granted unless the children would be adversely impacted (*supra,* 530 US, at 69 [plurality opn]). The case turned on a disagreement between the trial court and the parent over the best interests of the children, a disagreement that the trial court resolved based solely upon its determination of the children's best interests (*supra,* 530 US, at 72 [plurality opn]).

When the matter reached the United States Supreme Court, a majority of that Court expressed the view that parents have the fundamental right under the Due Process Clause to make decisions concerning the care, custody, and control of their children, including the right to make decisions concerning visitation with their children (*supra,* 530 US, at 66-67 [plural-

ity opn]; 530 US, at 77-78 [Souter, J., concurring]; 530 US, at 86-87 [Stevens, J., dissenting]). Furthermore, a majority restated the "traditional presumption that a fit parent will act in the best interest of his or her child" (*supra*, 530 US, at 69 [plurality opn]; *see*, 530 US, at 78 [Souter, J., concurring]; 530 US, at 87-89 [Stevens, J., dissenting]; 530 US, at 97-98 [Kennedy, J., dissenting]).

In the plurality opinion, Justice O'Connor wrote that the "decisional framework employed by the [trial court in *Troxel*] directly contravened [that] presumption" by effectively placing the burden on the parent in that case to disprove that visitation would be in the best interests of her children (*supra*, 530 US, at 69). Justice O'Connor considered it significant that the mother had consented to meaningful visitation even before court intervention, and the trial court had failed to give that consent any weight (*supra*, 530 US, at 71). Justice O'Connor wrote that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made" (*supra*, 530 US, at 72-73). She wrote, "[I]f a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination" (*supra*, 530 US, at 70).

The plurality opinion does not define the term "special weight," but it cites with apparent approval (*supra*, 530 US, at 70) a California statute that establishes a rebuttable presumption that grandparent visitation is not in the child's best interests if the parents oppose visitation (Cal Fam Code § 3104 [e] [1994]); a Maine statute that provides that grandparent visitation may be awarded if it is in the best interests of the child and "would not significantly interfere with any parent-child relationship or with the parent's rightful authority over the child" (Me Rev Stat Annot, tit 19-A, § 1803 [3] [1998]); and a Rhode Island statute requiring a grandparent to rebut, by clear and convincing evidence, the presumption that the parent's denial of grandparent visitation was reasonable (RI Gen Laws § 15-5-24.3 [a] [2] [v] [Supp 1999]). Only Justice Thomas in his concurrence expressed the view that, if indeed parents have the fundamental right to direct the upbringing of their children, a state must have a compelling reason for interfering with that fundamental right (*supra*, 530 US, at 80). Justice O'Connor wrote: "We do not, and need not, define today the precise scope of the parental due process right in the visita-

tion context. In this respect, we agree with JUSTICE KENNEDY that the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and that the constitutional protections in this area are best 'elaborated with care' " (*supra,* 530 US, at 73).

We conclude that the specific manner in which Domestic Relations Law § 72 was applied here does not violate the fundamental right of respondents under the Due Process Clause to make decisions concerning the care, custody, and control of their children. This case differs significantly from *Troxel.* Here, petitioner was cut off entirely from visitation. Family Court, in determining whether petitioner has standing to contest respondents' decision, considered the nature and basis of respondents' objection. It further considered the "indicated" child abuse report, as well as the children's close and loving relationship with petitioner. It considered the best interests of the children only after determining that petitioner has standing to contest respondents' decision. Unlike the trial court in *Troxel,* Family Court did not presume that petitioner's request for visitation would be granted in the absence of a showing that the children would be adversely impacted. Instead, by requiring petitioner to establish standing, the court gave respondents' decision some presumptive or "special" weight, which is all that *Troxel* requires. Finally, the court, after fully considering the nature and basis of respondents' objections, crafted a visitation order addressing those concerns, directing the parties not to make disparaging remarks about each other in the children's presence.

## IV

We further conclude that the record supports the court's determination that visitation is in the best interests of the children. Accordingly, we conclude that the order granting petitioner visitation should be affirmed.

PIGOTT, JR., P. J., PINE, BURNS and LAWTON, JJ., concur.

Order unanimously affirmed, without costs.