In the Matter of the PETITION OF R.A. and T.A., Petitioners–Appellants,

For the Adoption of C.A., a child,

and

Concerning N.F. and A.F., Appellees,

and

The State of Colorado, Intervenor–Appellee.

No. 01CA1739.

Colorado Court of Appeals, Div. I.

Sept. 26, 2002.

Certiorari Denied April 14, 2003.

Beltz & West, W. Thomas Beltz, Daniel A. West, Colorado Springs, Colorado, for Petitioners–Appellants.

Alan L. Bugg & Associates, P.C., Alan L. Bugg, Colorado Springs, Colorado, for Appellees.

Ken Salazar, Attorney General, Steven S. Knowlton, Assistant Attorney General, Denver, Colorado, for Intervenor–Appellee.

Opinion by Judge CASEBOLT.

In this adoption proceeding concerning the minor child, C.A., petitioners, R.A. and T.A., the child's adoptive parents, appeal a declaratory judgment entered in favor of N.F. and A.F., the child's paternal grandparents, upholding the constitutionality of the grandparent visitation statute, § 19–1–117, C.R.S. 2002. We affirm in part and remand for further proceedings.

The child's father died in 1994, and his mother died in 1997. Petitioners, his maternal aunt and uncle, were appointed as his guardians in 1997 pursuant to the mother's testamentary designation.

Following the guardianship designation, the parties stipulated to a visitation schedule for the grandparents. When petitioners commenced this adoption proceeding, the grandparents filed a conditional objection to the adoption and a request for visitation pursuant to § 19–1–117(1)(c), C.R.S.2002, asserting that they had helped raise the child and that he had spent a significant period in their home before his parents' deaths. They alleged that their relationship with the child

was very close and that the adoption would not be in his best interests unless adequate provisions were made to ensure continuation of reasonable visitation.

Following an evidentiary hearing, the magistrate determined that the child's best interests would be served by adoption, and he entered a final decree to that effect. Also in the decree, the magistrate found that petitioners had acted in good faith concerning the grandparents' requests for visitation, but had failed to recognize the child's need for separate attention from the grandparents. The magistrate then set forth a specific visitation schedule for the grandparents. The magistrate noted that petitioners had challenged the constitutionality of § 19–1–117 both facially and as applied, but held that he lacked authority to address that issue.

Neither party directly appealed the magistrate's decree. However, petitioners subsequently filed a motion in the adoption proceeding for declaratory judgment and a request that the district court determine whether § 19–1–117 is constitutional, both facially and as applied. The state attorney general intervened for the limited purpose of addressing the challenge to § 19–1–117.

The district court upheld the facial constitutionality of the statute, but did not address its constitutionality as applied. This appeal followed.

## I.

▋ Petitioners first contend the district court erred in determining that, on its face, § 19–1–117 does not violate the due process guarantees of the federal and state constitutions. We disagree.

As pertinent here, § 19–1–117(1) permits a grandparent to seek a visitation order when there is or has been "a child custody case or a case concerning the allocation of parental responsibilities relating to that child." The statute defines such a case in three ways:

(a) That the marriage of the child's parents has been declared invalid or has been dissolved by a court or that a court has entered a decree of legal separation with regard to such marriage;

(b) That legal custody of or parental responsibilities with respect to the child have been given or allocated to a party other than the child's parent or that the child has been placed outside of and does not reside in the home of the child's parent, excluding any child who has been placed for adoption or whose adoption has been legally finalized; or

(c) That the child's parent, who is the child of the grandparent, has died.

A division of this court recently reviewed the constitutionality of § 19–1–117 in light of the Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The division declined to find § 19–1–117 facially unconstitutional. Instead, it read the statute as requiring courts to give special significance to the parent's decisions concerning grandparent visitation in the context of the best interests of the child. *In re Custody of C.M.*, 2002 WL 31116773, —— P.3d —— (Colo.App. No. 00CA2313, Sept. 12, 2002).

The *C.M.* division noted that, unlike the Washington statute found unconstitutional in *Troxel*, § 19–1–117 employs the best interests standard, limits standing to grandparents, and permits a petition for visitation only if there is or has been a child custody case. Relying upon *In re Custody of C.C.R.S.*, 892 P.2d 246 (Colo.1995), the division explained that the best interests standard must be applied with a presumption that the biological parent has the primary right to custody. The division concluded that, because § 19–1–117 is more narrowly drawn than the statute at issue in *Troxel* and can be construed to incorporate the presumption favoring custodial parents inherent in the best interests standard, it satisfies the constitutional requirements set forth by *Troxel*.

We agree with the finding of facial constitutionality in *C.M.* Although petitioners further argue that § 19–1–117 also deprives them of due process under the Colorado Constitution, they have identified no specific state constitutional requirements that differ from or are more exacting than those set forth in *Troxel*. Thus, we need not separately examine the facial constitutionality of

§ 19–1–117 under the Colorado Constitution. *See In re Petition of M.G.,* 58 P.3d 1145 (Colo.App.2002).

Finally, petitioners suggest due process requires that parental unfitness be shown before the best interests analysis is undertaken. However, the supreme court has determined that due process does not impose such a requirement. *See In re Custody of C.C.R.S., supra* (in a custody dispute between biological and psychological parents, the best interests of the child are paramount).

Accordingly, we conclude that § 19–1–117 is constitutional on its face.

## II.

■ Petitioners next assert that an irreconcilable conflict exists between § 19–1–117(1)(b) and (c). Essentially, they contend that under § 19–1–117(1)(b), grandparents may seek a visitation order when either legal custody of the child has been given to a party other than the child's parent or the child has been placed outside of and does not reside in the home of his parent. However, the ability to seek visitation under subsection (b) terminates when either the child is placed for adoption or an adoption of that child has been legally finalized, which petitioners contend has occurred here. In contrast to this termination provision, under § 19–1–117(1)(c) a grandparent may nevertheless seek visitation even after an adoption if a parent is deceased. We perceive no irreconcilable conflict.

First, we note that grandparents did not rely upon § 19–1–117(1)(b) in seeking visitation. Instead, they relied solely upon § 19–1–117(1)(c).

■ Second, the so-called "adoption exclusion" in § 19–1–117(1)(b) has been construed to apply only when a child becomes available for adoption because the natural parents' rights have been legally terminated. *See People in Interest of N.S.,* 821 P.2d 931 (Colo.App.1991). Thus, § 19–1–117(1)(b) creates an interim statutory right in favor of grandparents to visit grandchildren until placement of the child for adoption or entry of a final decree of adoption. *See also People*

*in Interest of J.W.W.,* 936 P.2d 599 (Colo. App.1997).

■ Accordingly, the adoption exclusion of § 19–1–117(1)(b) is not applicable here, despite the adoption, because the biological parents' rights were not terminated in dependency and neglect, relinquishment, or similar proceedings; rather, their deaths provide the sole basis both for grandparents' request and for the adoption. Hence, we perceive no irreconcilable conflict between subsections (b) and (c). *See also In re Marriage of Aragon,* 764 P.2d 419 (Colo.App.1988)(grandparents' visitation rights were derived from § 19–1–117(1)(a), because the parents' marriage had been dissolved and the child was adopted by his stepfather); *cf. People in Interest of N.S., supra* (distinguishing *Aragon* and applying adoption exclusion of § 19–1–117(1)(b) where parents' legal rights were terminated in dependency and neglect proceeding).

## III.

■ Petitioners next contend the district court erred in determining that § 19–1–117 does not violate their right to equal protection. Again, we disagree.

■ Adoption is the act by which relations of maternity, paternity, and affiliation become legally recognized between persons not so related by birth. *See Graham v. Francis,* 83 Colo. 346, 265 P. 690 (1928).

■ Adoption is not recognized by the common law. *Wright v. Wysowatcky,* 147 Colo. 317, 363 P.2d 1046 (1961). It is a creature of statute and is governed by the provisions of § 19–5–200.2, et seq., C.R.S. 2002. *See In re Petition of S.O.,* 795 P.2d 254 (Colo.1990). Therefore, it is within the power of the General Assembly to define and regulate adoption. *See In re Adoption of T.K.J.,* 931 P.2d 488 (Colo.App.1996).

■ The equal protection guarantee of the United States Constitution requires like treatment of persons who are similarly situated. *Rodriguez v. Schutt,* 914 P.2d 921 (Colo.1996).

■ When a statute is challenged as violating equal protection because it treats two groups differently, the threshold question is whether those two groups are similarly situated. If they are not similarly situated, the equal protection guarantee is not implicated. *Christie v. Coors Transportation Co.*, 933 P.2d 1330 (Colo.1997).

### A.

Petitioners assert that, normally, in an adoption, the biological parents' rights are terminated and the grandparents' associated rights to visitation are also terminated. Here, however, because the rights of the biological parents were not terminated, but rather lapsed because of death, grandparents are able to seek visitation. This dichotomy, petitioners assert, results in unequal treatment of similarly situated classes of adoptive parents of children whose parents died and those whose parents' rights were terminated. We disagree.

For purposes of determining grandparent visitation, § 19–1–117(1) distinguishes between those two classes of adoptive parents. However, these two classes are not similarly situated.

For example, a stepparent adopting a child born to his or her spouse is not similarly situated to a person adopting a child whose biological parents' rights have been terminated. The biological parent who consents to a stepparent adoption retains parental rights. *See* § 19–5–203, C.R.S.2002. Practically speaking, the adopting stepparent knows of and must acknowledge preexisting familial relationships between the child and his or her relatives. In contrast, persons adopting a child whose biological parents' rights have been terminated do not necessarily know of and are not required to acknowledge such relationships.

Moreover, when adoption follows termination of parental rights, the family unit has already been dissolved through legal means, and the adoptive parents take the child unfettered by legal relationships. In contrast, adoption following the death of one or both biological parents does not follow dissolution of the original family unit—indeed, preexisting extended family relationships may continue.

Thus, we reject the contention that these two classes of adoptive parents are similarly situated.

### B.

Section 19–5–211, C.R.S.2002, provides that after the entry of a final adoption decree, the person adopted shall be, to all intents and purposes, the child of the adoptive parent. Petitioners maintain that this provision makes adoptive parents and biological parents similarly situated. However, petitioners reason that § 19–1–117 treats adoptive parents and biological parents differently because it allows grandparents to seek visitation of an adopted child, but not of a biological child, unless there is or has been a "custody case." We disagree.

■ It is true that, in passing the adoption statutes, the General Assembly intended to place the adopted child in the same position as a biological child in the family. *See In re Marriage of Ashlock*, 629 P.2d 1108 (Colo.App.1981). However, granting adopted children the same rights as biological children does not automatically render adoptive parents similarly situated to biological parents for the purpose of equal protection analysis.

Natural parents who are not involved in "custody cases" have had little or no state involvement in their familial relationships. In contrast, adoptive parents by definition have had significant state involvement in the creation of their relationships, including, for example, the termination of biological parental rights, the placement of foster children, and the creation of the parent-child status by operation of state law. *See People in Interest of C.E.*, 923 P.2d 383 (Colo.App.1996)(biological parent has a liberty interest in the continuation of the parental relationship that is different from the interest of a prospective adoptive parent; therefore, a biological parent and an extended family member with whom a child has no existing custodial relationship are not similarly situated for equal protection purposes).

Biological parents are subject to the pressures of familial bonds and relationships to allow grandparent visitation. They know what the grandparents have to offer to the grandchildren and thus have a basis for reasoned decisions as to how much, if any, contact to allow. *Cf. Troxel v. Granville, supra* (in the first instance, the parent decides whether grandparent visitation would benefit the child).

In contrast, adoptive parents usually have much more restricted knowledge upon which to base a judgment concerning the involvement of the grandparents. No biological ties, let alone familial ones, give adoptive parents the same basis for a decision concerning visitation.

■ For these reasons, we conclude that adoptive parents are not similarly situated to biological parents for purposes of an equal protection analysis of § 19–1–117. Accordingly, we need not further address petitioners' equal protection argument.

### IV.

■ Petitioners contend that § 19–1–117 was applied to them in an unconstitutional manner. We conclude that further proceedings are required concerning this issue.

We first note that the district court did not address this contention. That fact precludes our review, *see Bolen v. Kathleen V. Ferry Trust,* 949 P.2d 82 (Colo.App.1997), and necessitates remand.

■ Moreover, when an appellate court sets forth new standards for resolving an issue, basic fairness may require a remand to the trial court for further proceedings. *See People v. Schneider,* 25 P.3d 755 (Colo.2001); *Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913 (Colo.1997).

Here, *C.M.* sets forth a new standard for determining the propriety of grandparent visitation by requiring courts to give special significance to the parents' decisions. Because the magistrate did not have the benefit of *C.M.* and therefore made no findings concerning that standard, and because the district court also did not address the as-applied argument, a remand is appropriate.

On remand, the district court shall determine whether the magistrate gave special significance to petitioners' wishes. Because petitioners did not directly appeal the visitation provisions of the final decree, however, we will not vacate that part of the decree at this time. *Cf. In re Custody of C.M., supra* (where appeal taken from visitation order, appellate court vacated order and directed trial court to redetermine issue on remand).

If, on remand, the district court determines that the magistrate gave no special significance to petitioners' wishes, or it cannot discern whether the magistrate did so, it shall vacate that portion of the decree granting visitation and shall remand to the magistrate for further proceedings. If it determines that the magistrate did so, the judgment shall stand affirmed.

That part of the judgment determining that § 19–1–117 is facially constitutional is affirmed, and the case is remanded for further proceedings consistent with the views expressed in this opinion.

Judge METZGER and Judge WEBB concur.