### In re the CUSTODY OF C.M., a minor child,

**P.B.C., Appellant,**

**and**

**J.D.M., Respondent,**

**and**

**Concerning K.D., Intervenor–Appellee,**

**and**

**State of Colorado, Intervenor–Appellee.**

No. 00CA2313.

Colorado Court of Appeals, Div. I.

Sept. 12, 2002.

As Modified on Denial of Rehearing Jan. 2, 2003.

Certiorari Denied Aug. 4, 2003.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2001.

Law Offices of Joseph H. Antolinez, L.L.C., Joseph H. Antolinez, Lakewood, Law Office of Melissa E. Miller, L.L.C., Melissa E. Miller, Denver, CO, for Appellant.

K.D., Pro Se.

Ken Salazar, Attorney General, Steven S. Knowlton, Assistant Attorney General, Denver, CO, for Intervenor–Appellee State of Colorado.

Opinion by Judge METZGER.

In this post-decree proceeding, P.B.C. (mother) appeals the trial court's order awarding visitation to intervenor K.D. (grandmother). We vacate the order and remand the case for further proceedings.

Pursuant to the 1998 stipulated permanent orders in the dissolution action between mother and J.D.M. (father), mother received sole custody of their minor child, and all parenting time awarded to father was to be supervised by grandmother, his mother. The stipulation provided for supervised parenting time on weekends with alternating overnights on Saturdays. The parties also alternated legal holidays. The stipulation further specified that no formal grandparent visitation order was necessary because grandmother was to receive the same visitation as father, and he was not required to be present during her visitation. Grandmother also signed the stipulation.

Mother later moved to terminate father's parenting time based upon his alleged substance abuse and to reduce grandmother's visitation to one day per month with no overnights. The court terminated father's parenting time and also entered a temporary order that continued grandmother's visitation according to the established schedule, but outside father's presence. Grandmother responded that mother had denied scheduled visitation, and she requested not only that the existing schedule be permanently continued, but also that additional visitation be ordered to make up for denied visits.

After an evidentiary hearing, the trial court noted that mother, as the sole custodian, had decision-making authority for all major issues involving the child. Nevertheless, the court continued the basic schedule except for minor adjustments. The court ordered visitation on the first Saturday of every month from 9:00 a.m. to 7:00 p.m., and on the third weekend of every month from 9:00 a.m. Saturday to 10:00 a.m. Sunday. The court expressly provided that mother could be present during such visitation when she so desired. The court also ordered visitation overnight on grandmother's birthday every year and on grandparents' day in odd-numbered years. Grandmother was given visitation from 5:00 p.m. on December 23 until 8:00 p.m. on December 24, one overnight during the four-day Thanksgiving holiday, and the Saturday before Easter.

Mother appeals.

I.

■ We reject mother's contention that § 19–1–117, C.R.S.2001, which authorizes a trial court to award a grandparent reasonable visitation with a grandchild if such an

award is in the best interests of the child, *see In re Marriage of Oswald,* 847 P.2d 251 (Colo.App.1993), is unconstitutional on its face.

## A.

■ A legislative enactment that infringes on a fundamental right is constitutionally permissible only if it is necessary to promote a compelling state interest and does so in the least restrictive manner possible. *Evans v. Romer,* 882 P.2d 1335 (Colo.1994), *aff'd,* 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996); *Collins v. Jaquez,* 15 P.3d 299 (Colo. App.2000).

■ A statute is unconstitutional on its face if no conceivable set of circumstances exists under which it may be applied in a constitutionally permissible manner. *Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *People v. Juvenile Court,* 893 P.2d 81 (Colo.1995).

■ When a statute is susceptible of both constitutional and unconstitutional interpretations, we must adopt the constitutional interpretation. *Renteria v. Colorado State Dep't of Pers.,* 811 P.2d 797, 799 (Colo.1991).

## B.

The Supreme Court has addressed the issue of parental autonomy in a number of cases over the years and has always used strict scrutiny when deciding those cases. *Lassiter v. Dep't of Social Servs.,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Pierce v. Soc'y of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *see generally* Maegen E. Peek, *Grandparent Visitation Statutes: Do Legislatures Know the Way to Carry the Sleigh Through the Wide and Drifting Law?,* 53 Fla. L.Rev. 321 (2001).

In *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the Supreme Court considered the Washington grandparent visitation statute, but did not specify the appropriate level of scrutiny for statutes that infringe on the parent-child relationship. *See* Bryan Thomas White, Note, *Muddling Through the Murky Waters of Troxel: Will Grandparent Visitation Sink or Swim?,* 39 Fam. & Conciliation Cts. Rev. 104, 108 (2001). The Court also did not decide whether the state's interest was a compelling one. However, the potential intrusions upon fundamental parental rights posed by the Washington statute clearly led the Court to determine that the statute did not satisfy due process. Thus, we conclude that strict scrutiny is the proper standard of review.

## C.

In *Troxel v. Granville, supra,* a plurality of the Supreme Court struck down the Washington statute because it unconstitutionally infringed upon the fundamental due process right of parents to make decisions concerning the care, custody, and control of their children. The statute, Wash. Rev.Code § 26.10.160(3), permitted "any person" to petition for visitation rights "at any time" and authorized the courts to grant such rights whenever visitation served the child's best interests.

The Supreme Court initially observed that one of the earliest recognized fundamental rights is that of parents to rear their children. It then found that the "breathtakingly" broad scope of the Washington statute infringed on that fundamental right. In particular, the Court noted that the statute limited neither when nor by whom a petition for visitation could be brought. The statute also failed to require that the parent's decision concerning visitation be given any presumption of validity or special weight in the best interests determination. In practical effect, therefore, the statute permitted a court to disregard and overturn any decision by a fit biological parent concerning visitation based solely on the court's determination of the child's best interests. Thus, the statute placed the burden on the fit biological parent to disprove that visitation would be in the child's best interests.

The Court concluded that this decisional framework contravened the traditional presumption that fit parents will act in the best interests of their children. To avoid such a

result, the Court held that a fit parent's own determination must be accorded special weight.

The Court declined to define further the precise scope of the parental due process right in the visitation context because visitation is decided on a case-by-case basis. Specifically, the Court refused to consider whether due process requires that all nonparental visitation statutes include a showing of harm or potential harm to the child as a condition precedent to granting visitation over a parent's wishes.

### D.

Mother maintains that § 19–1–117(1), C.R.S.2001, is unconstitutional because, like the statute in *Troxel*, it does not require the court to give any special weight or presumptive effect to a biological parent's wishes when determining the child's best interests. The State appears in this appeal for the purpose of defending the constitutionality of § 19–1–117 pursuant to C.R.C.P. 57(j) and C.A.R. 44(a), and urges that the best interests standard itself mandates not only that the parent's preferences be considered, but also that deference be accorded to parental decisions. We agree with the State's interpretation.

Unlike the statute at issue in *Troxel*, § 19–1–117(1) limits standing to grandparents and permits a petition for visitation only if there is or has been a child custody case or a case concerning the allocation of parental responsibilities. These limitations ensure that decisions made in intact families where there has been no prior intervention by the court may not be challenged.

Further, one of the relevant factors in determining a child's best interests is the "wishes of the child's parents as to parenting time." Section 14–10–124(1.5)(a)(I), C.R.S. 2001; *see In re Marriage of Garst*, 955 P.2d 1056 (Colo.App.1998). And, the best interests standard, which is the guiding principle in awarding custody even in disputes involving nonparents, is subject to the presumption that the biological parent has a first and prior right to custody. That presumption may be rebutted by evidence establishing the

welfare of the child is better served by granting custody to a nonparent. *In re Custody of C.C.R.S.*, 892 P.2d 246 (Colo.1995).

In light of these principles, we conclude that § 19–1–117 may be construed to embody the protections required by *Troxel v. Granville, supra*. We recognize that § 14–10–124(1.5), C.R.S.2001, does not specify that the biological parent's decisions are to receive greater consideration than the other relevant factors, and § 19–1–117 also is silent on that point. However, neither statute precludes our interpretation, based on well-settled Colorado case law, that the biological parent's decisions concerning grandparent visitation must carry special weight and significance in the adjudication of the grandparent's petition. We read § 19–1–117 as containing such a requirement. The burden of proof must be such that the parent need not prove that the grandparent visitation would adversely affect the child.

We also decline to elaborate on the precise weight to be afforded a parent's decision regarding grandparent visitation. We anticipate that the appropriate considerations will emerge on a case-by-case basis.

Our conclusion that § 19–1–117 is constitutional is consistent with the result reached in other jurisdictions. *See McGovern v. McGovern*, 201 Ariz. 172, 33 P.3d 506 (Ariz.Ct.App.2001)(prior precedent did not require the grandparent visitation statute to be invalidated under *Troxel*, and statute has self-limiting features and, if applied as written with attention to the procedural safeguards required by *Troxel*, would not impermissibly intrude on parents' rights); *In re Marriage of Harris*, 92 Cal.App.4th 499, 112 Cal.Rptr.2d 127 (2001) *(review granted* Jan. 3, 2002)(concluding grandparent visitation statute not in per se violation of the Due Process Clause and requiring that the statute be construed to require grandparents to show by clear and convincing evidence that lack of visitation would be detrimental to the child); *Skov v. Wicker*, 32 P.3d 1122 (Kan.2001)(declining to find statute facially unconstitutional and remanding with instructions to apply a presumption in favor of the fit parent and to require the grandparent to prove both that visitation is in the grand-

child's best interests and that a substantial relationship with the grandparent already exists); *Rideout v. Riendeau,* 761 A.2d 291 (Me.2000)(upholding constitutionality of grandparent visitation statute because state had a compelling interest in encouraging contact, and statute was sufficiently narrow because it required a sufficient existing relationship between grandparent and child); *Brice v. Brice,* 133 Md.App. 302, 754 A.2d 1132 (2000)(rejecting mother's claim that grandparent visitation statute is facially unconstitutional and holding that the statute was unconstitutionally applied to facts strikingly similar to those in *Troxel* ); *Heltzel v. Heltzel,* 248 Mich.App. 1, 638 N.W.2d 123 (2001)(finding custody statute constitutionally infirm as applied because mother had ultimate burden of persuading the court that the child belonged in her custody and remanding for appropriate consideration of mother's fundamental liberty interest in childrearing); *Wilde v. Wilde,* 341 N.J.Super. 381, 775 A.2d 535 (App.Div.2001)(upholding statute's constitutionality, but finding that it had been applied in an unconstitutional manner because determinations of the mother, whose fitness was not contested, did not receive any special weight). *See generally* George L. Blum, Annotation, *Grandparents' Visitation Rights Where Child's Parents are Living,* 71 A.L.R.5th 99, 1999 WL 740453 (1999).

### E.

Mother further argues that § 19–1–117(3), C.R.S.2001, impinges upon a parent's fundamental rights by permitting the court to order reasonable attorney fees to the prevailing party. Because the record before us contains no request or award of fees under this subsection, we do not reach that question.

### II.

Mother next contends the trial court's award of visitation to the grandmother under § 19–1–117 unconstitutionally infringed upon her fundamental rights as a parent because her decisions concerning that issue were given no special weight. Essentially, mother argues that the trial court applied § 19–1– 117 in an unconstitutional manner. We conclude that further proceedings are required.

Mother testified that she did not intend to deny visitation to the grandmother, but felt that it should be limited to one day per month and no overnights so that the child's normal routine would not be affected. She said her proposed schedule allowed the child to spend "quality time" with the immediate family as well as with extended family. Based upon a suggestion of the child's therapist to address the child's behavior problems, mother also requested that she be allowed to supervise visitation.

Mother additionally stated specific concerns related to the grandparents' home and grandmother's use of diapers and bottles, which mother felt "infantilized" the child. She specifically requested that grandmother not be allowed to take the child to Cheyenne, Wyoming, to visit relatives because mother's car was not reliable and she would be unable to retrieve the child in the event of an emergency.

Although the trial court discounted many of mother's concerns, it made no findings concerning the child's best interests, did not accord mother's proposed schedule any special weight, and did not address whether and how that schedule would fail to meet the child's best interests. The court also made no findings to support that portion of its order allowing grandmother to take the child to Wyoming over mother's objections.

On this record, we conclude the visitation order must be vacated, and the visitation issue must be redetermined. In its discretion, the trial court may conduct such further proceedings and receive such additional evidence as it deems necessary.

The order is vacated, and the case is remanded for further proceedings.

Judge ROTHENBERG and Judge KAPELKE concur.