In the Matter of the Petition of R.A., Jr. and T.A., Petitioners–Appellants,

for the Adoption of C.A., a Child, and Concerning N.F. and A.F., Respondents–Appellees.

No. 04CA0503.

Colorado Court of Appeals, Div. III.

April 7, 2005.

Rehearing Denied June 23, 2005.

Certiorari Granted Oct. 3, 2005.

Beltz & West, P.C., W. Thomas Beltz, Colorado Springs, Colorado, for Petitioners–Appellants.

Kenton D. Kinnaird & Associates, P.C., Kenton D. Kinnaird, Colorado Springs, Colorado, for Respondents–Appellees.

DAILEY, J.

In this post-adoption proceeding, R.A., Jr. and T.A. (parents), the adoptive parents of C.A., appeal from an order reinstating visitation rights to N.F. and A.F., the child's paternal grandparents. We vacate the order.

The child was born in May 1992. His father died just before he turned two, and his mother died just before he turned five. He and his mother had come to Colorado in 1996 to live with his maternal uncle and aunt, R.A and T.A. Following mother's death in 1997, R.A. and T.A. were appointed as his guardians. In 1999, R.A. and T.A. filed a petition to adopt the child, and the child's paternal grandparents, who live in Nevada, filed a conditional objection to the adoption and a request for visitation.

In October 2000, after an evidentiary hearing, the magistrate granted the petition for adoption. The magistrate also found that visitation with the grandparents was in the child's best interests and that, although R.A. and T.A. had acted in good faith concerning requests by the grandparents for visitation, they had not "fully recognized the child's need for separate attention related to his parental heritage." Concluding that it would be in the child's best interests to establish a specific visitation schedule to avoid future conflicts between the parties, the magistrate included a visitation schedule in the adoption decree.

Neither party requested a review of the adoption decree. However, parents moved for a declaratory judgment as to the constitutionality of § 19–1–117, C.R.S.2004, the grandparent visitation statute, both on its face and as applied to them. The district court upheld the facial constitutionality of the statute, but did not address parents' "as applied" constitutional challenge. Parents appealed, and a division of this court upheld the facial constitutionality of the statute but remanded for further proceedings on the "as applied" challenge. *See In re Petition of R.A.,* 66 P.3d 146, 149–51 (Colo.App.2002). The division instructed the district court to determine on remand whether the magistrate had given "special significance" to the parents' wishes, as required under *In re Custody of C.M.,* 74 P.3d 342 (Colo.App.2002). *See In re Petition of R.A., supra,* 66 P.3d at 151.

Unable to determine from the record whether the magistrate had given "special significance" to parents' wishes, the district court vacated the visitation portion of the decree and remanded the matter to the magistrate for further proceedings. After conducting a supplemental evidentiary hearing, the magistrate stated that he had initially given, and was still giving, special significance to parents' wishes; nonetheless, he reinstated the visitation order, based on his conclusion that it was in the best interests of the child to do so.

The district court adopted the magistrate's order.

## I.

█ Initially, we reject parents' contention that the district court erred in remanding the matter to the magistrate to conduct further proceedings.

A division of this court had remanded the case for further proceedings, instructing the district court, in the first instance, to determine whether the magistrate had given special significance to parents' wishes regarding visitation. Further, the division directed that:

> If, on remand, the district court determines that the magistrate gave no special significance to [parents'] wishes, or it cannot discern whether the magistrate did so, it shall vacate that portion of the decree granting visitation and shall remand to the magistrate for further proceedings. If it determines that the magistrate did so, the judgment shall stand affirmed.

*In re Petition of R.A., supra,* 66 P.3d at 151.

Here, when the district court could not determine whether the magistrate had given special significance to parents' wishes, it had no option but to remand the matter to the magistrate for further proceedings. *See Powell v. Hart,* 854 P.2d 1266, 1267 (Colo. 1993) (trial court must comply with mandate of appellate court); *Colo. State Bd. of Med. Exam'rs v. McCroskey,* 940 P.2d 1044, 1046 (Colo.App.1996) (trial court must comply with specific directions of an appellate court mandate on remand).

Parents' reliance on § 19–1–108(3)(a), C.R.S.2004, is misplaced. Under § 19–1–108(3)(a), each party in a juvenile matter has the right to a hearing before a judge in the first instance, but if that right is waived, the party is bound by the findings and recommendations of the magistrate, subject to a request for review by the court.

Here, the visitation issue was originally submitted to and decided by the magistrate without objection by either party. Parents appealed not the visitation provisions of the adoption decree, but rather the denial of a subsequent motion seeking declaratory relief with respect to those provisions. In light of this procedural history, parents were in no position to argue that on remand the district court, rather than the magistrate, had to decide issues integrally related to those originally decided by the magistrate.

## II.

█ Parents also contend that the magistrate did not give "special significance" to their wishes when granting grandparent visitation. We agree.

### A.

We are not persuaded by grandparents' assertion that adoptive parents' wishes are not entitled to as much weight as those of natural parents.

In the prior appeal, the division found that, for equal protection purposes, adoptive and biological parents were not similarly situated for purposes of determining the threshold circumstances under which grandparents could be permitted to seek court-enforced visitation rights. *See In re Petition of R.A., supra,* 66 P.3d at 150–51. However, nothing in that opinion indicated that the wishes of adoptive parents should be given less weight than those of biological parents in determining the merits of the visitation request. If anything, the division's remand order necessarily implies that the wishes of adoptive parents, like those of biological parents, are to be given "special significance."

Further, adoption is a creature of statute; therefore, it is within the power of the General Assembly to define and regulate. *See In re Petition of R.A., supra,* 66 P.3d at 149.

Under § 19–5–211(1), C.R.S.2004, an adopted child is, "to all intents and purposes, the child of the [adoptive parents]" and is "entitled to all the rights and privileges and be subject to all the obligations of a child born in lawful wedlock to the [adoptive parents]." Colorado courts have long recognized that the intent underlying the adoption statute is to place an adopted child in the same position as a natural child. *In re Marriage of Ashlock,* 629 P.2d 1108, 1109 (Colo. App.1981); *see also People v. Estate of Mur-*

*phy,* 29 Colo.App. 195, 197, 481 P.2d 420, 421 (1971) (adopted child is placed "in the same legal status as a lineal descendant of the adopting parents"). Correspondingly, the intent of the statute is to bestow upon adoptive parents all the rights and duties of natural parents. *See In re Adoption of T.K.J.,* 931 P.2d 488, 492 (Colo.App.1996).

Because we discern no statutory basis for differentiating between the rights of natural and adoptive parents in this area, we conclude that, in a dispute over grandparent visitation, the wishes of adoptive parents are entitled to the same consideration as those of natural parents.

### B.

At common law, grandparents had no rights of visitation, and "a parent's obligation, if any, to facilitate a relationship between the child and the child's grandparents was a moral one only." *Glidden v. Conley,* 175 Vt. 111, 820 A.2d 197, 203 (2003).

In *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the United States Supreme Court found an open-ended nonparent visitation statute unconstitutional as applied because it impermissibly infringed upon the long-established due process right of parents to make decisions concerning the care, custody, and control of their children. In the case, a four-member plurality of the Court recognized that, because of the traditional presumption that fit parents act in the best interests of their children, "at least some special weight" must be given to such parents' wishes regarding grandparent visitation. *See Troxel v. Granville, supra,* 530 U.S. at 70, 120 S.Ct. at 2062.

Subsequently, the division in *In re Custody of C.M., supra,* 74 P.3d at 345, construed § 19–1–117 to require biological parents' decisions be given "special weight and significance" in determining whether to grant visitation rights to grandparents.

Neither the Supreme Court in *Troxel* nor the division in *In re Custody of C.M., supra,* however, elaborated on how to analyze or apply the "special weight" requirement.

Courts recognize that, in light of the rebuttable nature of the presumption to which it is linked, the "special weight" requirement does not insulate parental wishes from judicial review. *See Fenn v. Sherriff,* 109 Cal. App.4th 1466, 1 Cal.Rptr.3d 185, 195 & n. 4 (2003) ("Giving the parent's determination 'special weight' is different than insulating the parent's determination from any court intervention whatsoever."); *Deem v. Lobato,* 136 N.M. 266, 96 P.3d 1186, 1190 (Ct.App. 2004) (while *Troxel* "require[s] courts to give special consideration to the wishes of parents," it does not give "parents the ultimate veto on visitation in every instance").

However, courts have not applied the "special weight" requirement uniformly. Some courts hold that it simply alters the weighing process by which trial courts balance multiple factors related to a "best interests of the child" analysis. *See Deem v. Lobato, supra,* 96 P.3d at 1191. Under this approach, a trial court is not obliged "to take at face value any explanation given by a parent," and "it is the trial court's prerogative to listen to the evidence and determine, in light of that evidence, whether a parent's alleged justification for denying or restricting visitation with grandparents holds water." *Megyese v. Woods,* 808 N.E.2d 1208, 1212, 1214 (Ind.Ct. App.2004) (quoting *Spaulding v. Williams,* 793 N.E.2d 252, 260 (Ind.Ct.App.2003)); *see also Jackson v. Tangreen,* 199 Ariz. 306, 18 P.3d 100, 104 (Ct.App.2000) (examining intent of parents); *Stacy v. Ross,* 798 So.2d 1275, 1280 (Miss.2001) (analyzing whether denial of grandparent visitation was unreasonable); *Morgan v. Grzesik,* 287 A.D.2d 150, 732 N.Y.S.2d 773, 778 (2001) (approving trial court's consideration of "nature and basis" of parent's decision).

Other courts accord extreme deference to parental wishes, do not question the parents' underlying reasons, and override parental decisions only for compelling reasons related to (1) the parents' unfitness to make decisions regarding the child's welfare or (2) the substantial harm to the child that would or could result from denial of grandparent visitation. *See, e.g., Linder v. Linder,* 348 Ark. 322, 72 S.W.3d 841, 858 (2002); *In re Marriage of Harris,* 34 Cal.4th 210, 17 Cal. Rptr.3d 842, 96 P.3d 141, 154 (2004); *Roth v. Weston,* 259 Conn. 202, 789 A.2d 431, 443

(2002); *Clark v. Wade*, 273 Ga. 587, 544 S.E.2d 99, 107 (2001); *In re Marriage of Howard*, 661 N.W.2d 183, 189 (Iowa 2003); *Blixt v. Blixt*, 437 Mass. 649, 774 N.E.2d 1052, 1061 (2002); *Moriarty v. Bradt*, 177 N.J. 84, 827 A.2d 203, 223 (2003); *Oliver v. Feldner*, 149 Ohio App.3d 114, 776 N.E.2d 499, 508 (2002); *Glidden v. Conley, supra.*

We find the latter authorities more persuasive. First, they are in accord with case law, developed in analogous contexts, establishing the type of showing (namely, a compelling state interest) ordinarily required to support state interference with the exercise of fundamental constitutional rights. *See generally In re E.L.M.C.*, 100 P.3d 546, 552 (Colo.App. 2004). Second, they are more consistent with the rationale underlying *Troxel.* As another division of this court recognized, "*Troxel* cautions that a judge should not find the presumption that a parent acts in the child's best interests rebutted merely because the judge believes a 'better decision' could be made". *See In re E.L.M.C.*, 100 P.3d at 558. Indeed, in *Troxel* itself, the plurality recognized that, "So long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel v. Granville, supra*, 530 U.S. at 68–69, 120 S.Ct. at 2061.

Further, in this context, the litigation process itself can have detrimental effects on the parent-child relationship. *See* Stephen A. Newman, *Grandparent Visitation Claims: Assessing the Multiple Harms of Litigation to Families and Children*, 13 B.U. Pub. Int. L.J. 21, 33 (2003)[hereinafter, Newman]; *cf. In re L.F.*, 121 P.3d 267, 2005 WL 550463 (Colo.App. No. 04CA0071, Mar. 10, 2005) (noting similar concerns in denying a grandparent, who cared for child at parents' request, standing to seek parental responsibilities under § 14–10–123(1)(c), C.R.S.2004).

■ For these reasons, we conclude that, in the case of fit parents, "[a]bsent a showing of harm, (or threat thereof) it is not for the state to choose which associations a family must maintain and which the family is permitted to abandon." *See In re Herbst*, 971 P.2d 395, 399 (Okla.1998).

■ "[P]roof that a fit parent's exercise of parental responsibilities poses actual or threatened emotional harm to the child establishes a compelling state interest sufficient to permit state interference with parental rights." *In re E.L.M.C., supra*, 100 P.3d at 558. However, not every type or degree of actual or threatened emotional harm will suffice; it must be "substantial," *see In re Marriage of Howard, supra*, 661 N.W.2d at 190, or "significant," *see Glidden v. Conley, supra*, 820 A.2d at 205.

In this regard, we recognize a difference between the type of harm experienced by children separated from grandparents who play only a secondary, or "companionate," role in their lives, and that experienced by children separated from grandparents who play a primary or quasi-parental role in their lives. *See generally* Solangel Maldonado, *When Father (or Mother) Doesn't Know Best: Quasi–Parents and Parental Deference After Troxel v. Granville*, 88 Iowa L.Rev. 865, 899 (2003); Newman, *supra.*

"Children deprived of the influence of a grandparent may lose important opportunities for positive growth and development. However, such a generalization falls short of establishing the type of harm that would justify state intervention into a parental decision denying contact." *In re Marriage of Howard, supra*, 661 N.W.2d at 190; *see also Glidden v. Conley, supra*, 820 A.2d at 205 ("[t]hat a child might benefit from contact with a grandparent" is insufficient to overcome parental wishes).

Nevertheless, the "special weight" given to parental wishes may be overcome, and the issue of visitation resolved solely on a "best interests of the child" basis, when children are subjected to the type of harm experienced when they are separated from grandparents who have functioned as their primary caregivers or quasi-parents. *See generally T.B. v. L.R.M.*, 567 Pa. 222, 786 A.2d 913, 917 (2001) (presumption favoring parent gives way "where the child has established strong psychological bonds, with a person who ... has ... provided care, nurture, and affection,

assuming in the child's eye a stature like that of a parent"); *see also Rideout v. Riendeau*, 761 A.2d 291, 301 (Me.2000) ("cessation of contact with a grandparent whom the child views as a parent may have a dramatic, and even traumatic, effect upon the child's well-being"); *In re Marriage of Howard, supra*, 661 N.W.2d at 191 (describing, as "substantial," potential harm to child from separating from a grandparent with whom the child had "developed a substantial relationship over a period of time, something akin to a parental relationship"); *Blixt v. Blixt, supra*, 774 N.E.2d at 1061 n. 16 (listing similar cases from other jurisdictions).

With these principles in mind, we turn to the circumstances of this case.

### C.

Here, the magistrate recognized, both initially and on remand, that parents had no intention of denying visitation. At all times, the dispute in this case centered on issues of how often, when, and where visitation would occur. Parents had one view, while the grandparents had another. On remand, the magistrate found:

> [T]he child's [adoptive] mother testified that the court ordered visitation placed stress on the family and that the parents had no intention of denying visitation to the grandparents, but that the parents should be trusted to do what was in the child's best interests instead of court ordered to do so. The father testified that the grandparents had not properly acknowledged the relationship that the child has to his legal parents and that this had contributed to the friction between the parties.

> Special significance was previously given to the wishes of [parents] and ... it is being given to them at this time as well. The tension and friction that exists between the parties requires that the prior court order be enforced. The Court is not confident that the grandparent visitation will be allowed, or if allowed that it will be limited unless it is enforceable by court order. Such visitation is in the best interest of the child. The Court finds that the State has

a compelling interest in entering this order.

Although the magistrate summarily stated that he had given and was still giving "special significance" to parents' wishes, and that the state had a compelling interest in entering the order, such statements alone were not sufficient to satisfy the "special weight" requirement of *Troxel* and *C.M.*

As indicated in part II(B) of this opinion, the magistrate was not free to disregard parents' wishes simply because he concluded it would be in the child's best interests to do so. The magistrate had to find either that parents were unfit or that their decisions to regulate visitation would substantially endanger the emotional health of the child.

Here, the magistrate found neither, nor would the record support such a finding. Grandparents did not assert that parents were unfit. And while grandparents had been very close to the child for two years early in his life, parents had been his primary caretakers for at least three (if not four) years before his adoption. In neither the four years preceding, nor the years since, the adoption, had grandparents played a primary or quasi-parental role in the child's life. Further, no evidence was presented indicating that the child would experience significant or substantial emotional harm in the absence or court ordered visitation.

In *Glidden v. Conley, supra*, 820 A.2d at 206–07, the Vermont Supreme Court remarked, in language applicable to the present case:

> The court's rationale for entering an enforceable visitation order—to eliminate the potential for [father] to restrict visitation due to his otherwise valid parental concerns—is far from compelling, and, standing alone, is not enough to sustain the decision. The court's order is thus precisely the type of decision making which, by disregarding and giving no deference to a fit custodial parent's determination of the child's best interests, exceeds the bounds of the Due Process Clause, violates [father's] fundamental rights, and was held unconstitutional in *Troxel.*

> . . . .

The court's decision in effect found father a fit parent for all purposes save one: making the decision about how often and in what manner his child would visit with the grandmother. In so deciding, the court erred and its decision cannot stand.

We reach the same conclusion in this case. *See also Latimer v. Farmer,* 360 S.C. 375, 602 S.E.2d 32, 39 (2004) (finding "no compelling or exceptional circumstances" to overcome "special weight" given parents' decision, even though "Grandparents enjoyed a close relationship with Child and were her primary caretakers during the [earlier] marital difficulties between Mother and Father").

We recognize that when an appellate court sets forth new standards for resolving an issue, a remand for further consideration by the trial court is ordinarily appropriate. *See In re Petition of R.A., supra,* 66 P.3d at 151. However, this matter has been remanded once already; in the hearing on remand, grandparents did not present additional evidence; and, the evidence grandparents presented in the initial hearing was insufficient to support a finding of the type of harm necessary to overcome parents' wishes. Consequently, no remand is necessary.

The order is vacated.

Judge CASEBOLT and Judge PICCONE concur.