[738 NYS2d 62]

In the Matter of SHELDON HERTZ, Appellant, v Dov HERTZ et al., Respondents.

Second Department, February 25, 2002

**APPEARANCES OF COUNSEL**

*Finder Novick Kerrigan Anderson & Palitz, LLP,* New York City (*Stephen H. Palitz* of counsel), for appellant.

*Snitow Kanfer Holtzer & Millus, LLP,* New York City (*Franklyn H. Snitow* and *Louis L. Nock* of counsel), for respondents.

*Eliot Spitzer, Attorney General,* New York City (*Michael S. Belohlavek* and *Patrick J. Walsh* of counsel), in his statutory capacity under Executive Law § 71.

### OPINION OF THE COURT

ALTMAN, J.

At issue on this appeal is whether Domestic Relations Law § 72, New York's grandparental visitation statute, is unconstitutional on its face in light of the decision of the United States Supreme Court in *Troxel v Granville* (530 US 57). We conclude that the statute is not facially invalid.

The petitioner commenced this proceeding pursuant to Domestic Relations Law § 72 to obtain visitation with his 15 minor grandchildren. The respondents are the grandchildren's parents (hereinafter the parents). Following marital difficulties, the petitioner and his wife separated. Since that time, the parents have refused to permit the petitioner to visit or have a relationship with his grandchildren. Based on the recent decision of the Supreme Court of the United States in *Troxel v Granville (supra),* the parents made a preanswer motion to dismiss the petition on the ground that Domestic Relations Law § 72 violates the Fourteenth Amendment of the United States Constitution. The Supreme Court granted the motion and "deemed" the statute to be unconstitutional (*see, Matter of Hertz v Hertz,* 186 Misc 2d 222).

Domestic Relations Law § 72 provides:

> "Where either or both of the parents of a minor child, residing within this state, is or are deceased, or where circumstances show that conditions exist which equity would see fit to intervene, a grandparent or the grandparents of such child may apply to the supreme court by commencing a special proceeding or for a writ of habeas corpus to have such child brought before such court, or may apply to the family court pursuant to subdivision (b) of section six hundred fifty-one of the family court act; and on the return thereof, the court, by order, after due notice to the parent or any other person or party having the care, custody, and control of such child, to be given in such manner as the court shall prescribe, may make such directions as the best

interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child."

The Washington State nonparental visitation statute at issue in *Troxel* permits "[a]ny person" to petition for visitation rights "at any time" and authorizes a court to grant visitation whenever it "may serve the best interest of the child" (Wash Rev Code § 26.10.160 [3]). In that case, paternal grandparents commenced a proceeding to obtain additional visitation with their two grandchildren. The mother had not refused all visitation, but only sought to limit visitation. After trial, the court granted the grandparents increased visitation.

When the case ultimately reached the Washington Supreme Court, that court found the statute to be facially invalid under the Federal Constitution because it unconstitutionally infringed on the fundamental right of a parent to rear his or her children. The United States Supreme Court affirmed the dismissal of the grandparents' petition, but declined to hold the Washington statute unconstitutional on its face. Rather, the plurality opinion concluded that the statute was unconstitutional as applied to the facts of the case.

Justice O'Connor, who authored the plurality opinion, described the Washington statute as "breathtakingly broad" (*Troxel v Granville, supra* at 67) in that it permitted any third party seeking visitation to subject a parent's decision regarding visitation to court review, according no deference to the parent's decision. The statute did not require a court to afford a parent's decision any presumption of validity or to give the parent's decision any weight whatsoever. Notably, the Washington Supreme Court had the opportunity to give the statute a narrower reading, but it declined to do so.

Justice O'Connor then reviewed the trial court's decision and found that the court's order was based on a "mere disagreement" with the mother's decision and not on any special factors that might justify the state's interference with the mother's rights (*see, Troxel v Granville, supra* at 68). The problem, as articulated by Justice O'Connor, was not that the trial court intervened, but that when it did so, it gave no special weight at all to the mother's determination of her children's best interests. In fact, the trial court applied the opposite presumption, presuming that grandparental visitation would be in the children's best interests unless it was shown that the children would be adversely impacted (*see, Troxel v Granville, supra* at 69). Justice O'Connor noted that a decision regarding

visitation is for the parent in the first instance and, if a fit parent's decision becomes subject to judicial review, the court must afford at least some special weight to the parent's decision. The plurality did not "define * * * the precise scope of the parental due process right in the visitation context" (*Troxel v Granville, supra* at 73) and concluded that "the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied" (*Troxel v Granville, supra* at 73).

Contrary to the parents' contention in this case, *Troxel* does not mandate a finding that Domestic Relations Law § 72 is unconstitutional per se (*see, Matter of Morgan v Grzesik,* 287 AD2d 150). "A facial challenge to a legislative Act is * * * the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid" (*United States v Salerno,* 481 US 739, 745). The fact that a statute might operate unconstitutionally under some circumstances is insufficient to render it entirely invalid (*see, United States v Salerno, supra* at 745). Legislative enactments are presumptively valid and a party challenging a statute must demonstrate its invalidity beyond a reasonable doubt (*see, Matter of Van Berkel v Power,* 16 NY2d 37, 40; McKinney's Cons Laws of NY, Book 1, Statutes § 150). That burden was not met in this case.

Domestic Relations Law § 72 can be, and has been, interpreted to accord deference to a parent's decision, although the statute itself does not specifically require such deference (*see, Matter of Coulter v Barber,* 214 AD2d 195; *Matter of Fitzpatrick v Youngs,* 186 Misc 2d 344, 348; *Matter of Smolen v Smolen,* 185 Misc 2d 828, 831). Further, Domestic Relations Law § 72 is drafted much more narrowly than the Washington statute. If the United States Supreme Court did not declare the "breathtakingly broad" Washington statute to be facially invalid (*Troxel v Granville, supra* at 67), then certainly the more narrowly drafted New York statute is not unconstitutional on its face. In fact, the Court indicated that it would be hesitant to hold specific nonparental visitation statutes unconstitutional per se because "much state-court adjudication in this context occurs on a case-by-case basis" (*Troxel v Granville, supra* at 73). *Troxel* does not prohibit judicial intervention when a fit parent refuses visitation, but only requires that a court accord "some special weight to the parent's own determination" (*Troxel v Granville, supra* at 70) when applying a nonparental visitation statute.

Consequently, the Supreme Court erred in concluding that Domestic Relations Law § 72 is unconstitutional per se and in dismissing the petition on that ground. We note that the parents' motion raised only the issue of whether Domestic Relations Law § 72 is facially invalid under *Troxel*. In determining that it is not, we express no opinion with respect to the application of the statute to the facts of this case.

Therefore, the order is reversed, on the law, the motion is denied, the petition is reinstated, and the matter is remitted to the Supreme Court, Kings County, for further proceedings in accordance herewith.

PRUDENTI, P.J., SMITH and ADAMS, JJ., concur.

Ordered that the order is reversed, on the law, with costs, the motion is denied, the petition is reinstated, and the matter is remitted to the Supreme Court, Kings County, for further proceedings in accordance herewith.