OPINION OF THE COURT
Sara P. Schechter, J.
Petitioner, a 14-year-old foster child, seeks visitation with Kamila and Jamila, his biological siblings who were adopted by *820 respondents two years ago. Although freed for adoption himself, petitioner has not been adopted and rejnains in Children’s Village. He had been a foster child in the home of respondents prior to the placement of his sisters there, but was removed due to sexually inappropriate behavior and temper tantrums. Respondents, adoptive parents of the twins Kamila and Jamila, now eight years old, strongly oppose contact between petitioner and the girls, although they have permitted visits by another biological sibling that they have not adopted.
Domestic Relations Law § 71 permits a brother to apply for visitation with his siblings “[w]here circumstances show that conditions exist which equity would see fit to intervene.” The statute does not address whether the sibling’s standing to apply survives adoption of the siblings he seeks to visit, and no appellate court has squarely addressed the question. Although Matter of Hatch v Cortland County Dept. of Social Servs. (199 AD2d 765 [3d Dept 1993]) is cited for the prbposition that the right survives adoption, that Court actually expressed “misgivings” on that issue and rested its affirmance on the Family Court’s finding that postadoption visitation would not be in the best interest of the children.
The strongest judicial endorsement of postadoption contact is found in People ex rel. Sibley v Sheppard (54 NY2d 320 [1981]). In that case the Court of Appeals construed parallel language in Domestic Relations Law § 72 to confer Standing to a biological grandparent to apply for postadoption visitation. A decade later, however, the United States Supreme Court decided Troxel v Granville (530 US 57 [2000]), which must weigh heavily in our deliberation in the current case. In Troxel, the Court was called upon to determine the constitutionality of a Washington state statute that permitted any person to seek visitation with a child regardless of relationship, with “best interest of the child” as the standard for determining such applications. (Wash Rev Code Ann § 26.10.160 [3].) This “breathtakingly broad” statute (Troxel, 530 US at 67) was found uncohstitutional as applied. Although the justices differed in their analyses — there were two concurring opinions and three dissents-j — the case nevertheless sounds a strong note of caution against interference with the fundamental Fourteenth Amendment liberty interest of parents in the care, custody and control of their children. As Justice O’Connor noted in the plurality opinion, “if a fit parent’s decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the *821 parent’s own determination.” (Troxel, 530 US at 70.) The respondents in the case at bar, who are adoptive parents, have no lesser rights than biological parents would have; through the unconditional adoption order, respondents acquired full parental rights and responsibilities in respect to Kamila and Jamila (Domestic Relations Law § 110).
Subsequent to Troxel, the Second and Fourth Departments of the Appellate Division have upheld the facial validity of New York’s grandparent visitation statute, while admonishing trial courts to give the parent’s decision special deference. (Hertz v Hertz, 291 AD2d 91 [2d Dept 2002]; Morgan v Grzesik, 287 AD2d 150 [4th Dept 2001].) One case, Lawrence v Lawrence (275 AD2d 985 [4th Dept 2000]), involved both grandparent and sibling visitation, and the Court applied the same analysis to both situations.
Even if petitioner’s standing has not been extinguished by the twins’ adoption, he still must establish that in the circumstances of this case “equity would see fit to intervene.” It is undisputed that petitioner has a sincere wish to have visits with his sisters. His attorney states that he feels left out and cut off from a family that has moved on without him. Since the child care agency that has custody and guardianship of petitioner supports his request for visits, we must assume that such contact would promote petitioner’s best interests. In determining a basis for equitable intervention, however, courts have looked to the actual history of contact between the relative seeking visitation and the children they wish to visit. In this case, the contact has been extremely limited. Petitioner had left the respondents’ home before the twins were placed there, and his sole contact with the twins was one visit lasting approximately five days over Thanksgiving 1999. Thus, an ongoing and affectionate relationship between petitioner and the girls has not developed. Courts have consistently held the existence of such a relationship to be the essential predicate to equitable intervention. (Matter of Hatch v Cortland County Dept. of Social Servs., supra; Matter of Lovell Raeshawn McC., 308 AD2d 589 [2d Dept 2003].)
We agree with the Jefferson County Family Court that Troxel requires a two-step approach in nonparent visitation proceedings. (Fitzpatrick v Youngs, 186 Misc 2d 344 [Fam Ct, Jefferson County 2000].) Since petitioner has not met his first-step burden of showing a basis to overrule respondents’ presumptively proper parental decision prohibiting visitation, the court will *822 not proceed to the second step of conducting a best interest hearing. In any event, such a hearing would be pointless since petitioner possesses no specific information concerning the best interests of Kamila and Jamila. Accordingly, respondents’ motion to dismiss the petition is granted.