OPINION
{¶ 1} Appellant, Denisha Washington, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting Jeanene Hammonds visitation rights with her granddaughter, Shanise Washington ("Shanise"). Because the trial court did not abuse its discretion in denying appellant's request for a continuance, and because R.C. 3109.12 is not unconstitutional on its face and not unconstitutional as applied in this case, we affirm that judgment.
 {¶ 2} Shanise was born on November 2, 1994 to appellant and Myron Hammonds.[1] Appellant and Mr. Hammonds were never married. Jeanene Hammonds is Mr. Hammonds' mother. On August 29, 2002, Mrs. Hammonds wrote a letter to the trial court requesting visitation with Shanise.[2] Mrs. Hammonds wrote that she had spent a considerable amount of time with her granddaughter until she was five, at which time appellant stopped allowing her to see Shanise.
 {¶ 3} The trial court scheduled an October 24, 2002 hearing to consider Mrs. Hammonds' request for visitation. Due to a number of failed attempts to serve appellant with notice of Mrs. Hammonds' request, that hearing was continued until May 8, 2003. On that date, appellant appeared before the trial court but the hearing was again continued until July 10, 2003. On December 3, 2003, after meditation failed to resolve this dispute, appellant's attorney signed a motion to continue the hearing again. The trial court granted that motion and scheduled the final hearing for December 22, 2003.
 {¶ 4} Appellant did not appear in court on December 22, 2003, and appellant's counsel requested another continuance. Her attorney stated that he mailed appellant a letter informing her of the hearing date and he had no explanation for why she was not present. The magistrate of the trial court denied the continuance request. The magistrate noted that appellant's counsel was present on December 3, 2003, when the hearing was set for December 22, 2003, and that both counsel and the court had the same mailing address for appellant. In appellant's absence, Mrs. Hammonds was the only witness to testify at the hearing.
 {¶ 5} Following the hearing, the magistrate found that it was appropriate to grant visitation to Mrs. Hammonds and that it was in Shanise's best interest to have visitation with her one weekend per month. After overruling objections from both appellant and Mrs. Hammonds, the trial court adopted the magistrate's decision granting Mrs. Hammonds' request for visitation.
 {¶ 6} Appellant appeals, assigning the following errors:
1. The trial court erred by violating the appellant's due process rights and sustaining the grandmother's complaint for visitation.
2. The magistrate erred by arbitrarily denying the appellant's motion to continue the case without cause.
 {¶ 7} We will address appellant's second assignment of error first. Appellant contends the trial court abused its discretion when it denied her request for a continuance. A trial court has broad discretion when ruling on a motion for continuance. Statev. Unger (1981), 67 Ohio St.2d 65, 67; Sayre v. Hoelzle-Sayre
(1994), 100 Ohio App.3d 203, 208. Thus, a trial court's denial of a motion for a continuance will only be reversed on appeal if the trial court abused its discretion. Id. An abuse of discretion connotes more than an error of law or judgment and implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 8} In Unger, supra, the court identified certain factors that should be considered in determining whether a continuance is appropriate. These factors are:
[T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.
Id. at 67-68.
 {¶ 9} Applying these factors to the present case, we note that Mrs. Hammonds' request for visitation was filed on August 29, 2002, and that there were no less than five continuances of that hearing before the December 22, 2003 hearing date. Thus, Mrs. Hammonds' request for visitation had been pending for more than a year when appellant failed to appear at the December 22, 2003, hearing. Moreover, appellant's counsel represented that he notified appellant of the hearing date by letter. Given these factors, the trial court did not abuse its discretion by denying appellant's request for a continuance. Accordingly, appellant's second assignment of error is overruled.
 {¶ 10} In her first assignment of error, appellant contends that R.C. 3109.12, Ohio's visitation statute where the mother is unmarried ("visitation statute"), violates her constitutionally protected due process rights both on its face and as applied to her. Appellant's contention is based solely upon Troxel v.Granville (2000), 530 U.S. 57, 120 S.Ct. 2054.
 {¶ 11} The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The due process clause provides heightened protection against government interference with certain fundamental rights and liberty interests. Washington v. Glucksberg (1997), 521 U.S. 702, 720,117 S.Ct. 2258. One of those protected fundamental rights is the right of a parent to make decisions concerning the care, custody, and control of their children. See, e.g., Stanley v. Illinois
(1972), 405 U.S. 645, 651, 92 S.Ct. 1208; Pierce v. Society ofSisters (1925), 268 U.S. 510, 534-535, 45 S.Ct. 571; Troxel,
supra.
 {¶ 12} R.C. 3109.12, in certain situations, allows the grandparents of a child born to an unmarried woman to file a complaint requesting reasonable companionship or visitation rights with the child. Id. at (A). The court may grant the requested visitation if it determines that such visitation is in the best interest of the child. Id. at (B). In determining whether such visitation is in the best interest of the child, the trial court must consider all relevant factors, including, but not limited to, the factors set forth in R.C. 3109.051(D). Id. Those factors are:
(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
(4) The age of the child;
(5) The child's adjustment to home, school, and community;
(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;
(7) The health and safety of the child;
(8) The amount of time that will be available for the child to spend with siblings;
(9) The mental and physical health of all parties;
(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;
(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;
(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
(14) Whether either parent has established a residence or is planning to establish a residence outside this state;
(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;
(16) Any other factor in the best interest of the child.
 {¶ 13} Our review of appellant's first assignment of error begins with an analysis of the United States Supreme Court's recent decision in Troxel, supra, which involved a challenge to the constitutionality of a Washington statute somewhat similar to R.C. 3109.12. In that case, Tommie Granville and Brad Troxel, who were never married, had two baby girls. After their relationship ended, Mr. Troxel moved in with his parents ("the Troxels") and regularly brought the children home for weekend visitation. Id. at 60. However, after Mr. Troxel killed himself, Ms. Granville informed the Troxels that she wished to limit their visitation to one visit per month. Id. Unhappy with that decision, the Troxels filed a petition for visitation under a Washington state statute that provided for "`[a]ny person [to] petition the court for visitation rights at any time including, but not limited to, custody proceedings.'" Id. at 61, quoting Wash.Rev. Code26.10.160(3) (1994). The statute allowed the court to grant visitation only upon a showing that such visitation was in the best interest of the child. Id. The Troxels requested two weekends of overnight visitation each month as well as two weeks of visitation each summer. While Ms. Granville did not oppose visitation entirely, she asked the court to limit visitation to one day per month. After a hearing, the court found that visitation would be in the children's best interest and ordered visitation one weekend per month, one week during the summer, and four hours on each of the grandparents' birthdays.
 {¶ 14} On appeal to the United States Supreme Court, a divided court found that the Washington statute, as applied, unconstitutionally infringed upon a parent's fundamental right to make decisions concerning the care, custody, and control of their children. Troxel, supra, at 67. The court's plurality opinion,[3] authored by Justice O'Connor, reasoned that a combination of factors compelled the conclusion that the trial court's application of the Washington statute exceeded the bounds of the due process clause. Id. at 68.
 {¶ 15} Significant to the present matter, Justice O'Connor noted that the "breathtakingly broad" statute effectively permits any third party seeking visitation to subject parental decisions concerning visitation to state court review and accorded a fit parent's decision concerning visitation no deference or special weight. Id. at 67. In practical effect, Justice O'Connor noted that a trial court could award visitation simply because the court disagreed with a parent's decision concerning visitation based solely on its determination of the child's best interest. Id. "[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a `better' decision could be made." Id. at 72-73.
 {¶ 16} Justice O'Connor also noted that the trial court seemed to presume that grandparent visitation was in a child's best interest and placed the burden on the parent to show that visitation was not in the best interest of the children or would adversely impact the child. Id. at 69. This framework disregarded the traditional presumption that a fit parent acts in the best interest of his or her child and failed to provide any protection for the mother's fundamental constitutional right to make decisions concerning the rearing of her own daughters. Id. In sum, the plurality opinion determined that the trial court unconstitutionally applied the Washington statute by failing to accord a fit parent's decision regarding visitation, any material weight or deference, by failing to presume that a fit parent acts in the child's best interest, by presuming that grandparent visitation was in the child's best interest, and by granting visitation to a grandparent in contravention of a fit parent's decision, merely because the trial judge disagreed with the parent's decision.
 {¶ 17} Appellant, relying solely on Troxel, first argues that R.C. 3109.12 is unconstitutional on its face because the statute, as written, does not contain an express presumption in favor of a fit parent's decision regarding visitation and allows a trial court to grant visitation based upon its determination that visitation is in the child's best interest. We note, however, that Troxel declined to strike down the Washington statute as facially unconstitutional. ("Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a per se matter.")Troxel, at 73.
 {¶ 18} A facial challenge to a legislative act is the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid. State v. Coleman (1997), 124 Ohio App.3d 78,80. Such a challenge asserts that a law is unconstitutional as written and without regard to the challenger's specific conduct. Cf. Columbus v. Meyer, 152 Ohio App.3d 46, 2003-Ohio-1270, at ¶31. If a statute is unconstitutional on its face, the state may not enforce the statute under any circumstances. Ruble v. Ream,
Washington App. No. 03CA14, 2003-Ohio-5969, at ¶ 17, quotingWomen's Med. Professional Corp. v. Voinovich (C.A.6, 1997),130 F.3d 187, 193.
 {¶ 19} Legislative enactments are afforded a strong presumption of constitutionality. State v. Collier (1991),62 Ohio St.3d 267, 269; State v. Bennett, 150 Ohio App.3d 450,2002-Ohio-6651, at ¶ 16. Thus, the party challenging a statute must prove that it is unconstitutional beyond a reasonable doubt. Id. If at all possible, statutes must be construed in conformity with the Ohio and United States Constitutions to save it from constitutional infirmities. Id.; In re Protest of Brooks,155 Ohio App.3d 370, 2003-Ohio-6348, at ¶ 10. Courts must apply "all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional." State v. Dorso (1983), 4 Ohio St.3d 60, 61. Therefore, when considering the constitutionality of a statute, courts will liberally construe a statute to save it from constitutional infirmities. State v. Sinito (1975),43 Ohio St.2d 98, 101, citing State ex rel. Prospect Hospital v.Ferguson (1938), 133 Ohio St. 325; In re Adoption of Greer
(1994), 70 Ohio St.3d 293, 300; see, also, R.C. 1.47 ("In enacting a statute, it is presumed that: [A] Compliance with the constitutions of the state and of the United States is intended").
 {¶ 20} At least three state courts of last resort have declared their own grandparent visitation statutes facially unconstitutional when the statute's language did not comply with the holding in Troxel for one reason or another. See DeRose v.DeRose (Mich. 2003), 666 N.W.2d 636, 643 (Michigan Supreme Court declaring statute facially unconstitutional because it did not require deference to fit parent's decision); Wickham v. Byrne
(Ill. 2002), 769 N.E.2d 1, 7-8 (Illinois Supreme Court declaring statute facially unconstitutional because it did not comply withTroxel); Santi v. Santi (Iowa 2001), 633 N.W.2d 312, 320
(Iowa Supreme Court declaring statute facially unconstitutional because it did not afford fit parents the presumption of acting in child's best interest). None of the statutes in these cases required the trial court to consider a parent's wishes regarding visitation in determining whether visitation was in the best interest of the child.
 {¶ 21} Many other courts, on the other hand, have upheld their state statutes against similar facial constitutional challenges by interpreting the statutes in a manner that complies with Troxel, even though their state statutes do not expressly comply with the requirements of Troxel. See, e.g., Roth v.Weston (Conn. 2002), 789 A.2d 431, 449-450 (rejecting facial challenge to statute but finding statute unconstitutionally applied); Glidden v. Conley (Vt. 2003), 820 A.2d 197, 204-205
(rejecting facial challenge to statute but finding statute unconstitutionally applied); Blixt v. Blixt (Mass. 2002),774 N.E.2d 1052, 1060 (rejecting facial challenge); Evans v.McTaggart (Alaska 2004), 88 P.3d 1078, 1089 (rejecting facial challenge); Deem v. Lobato (N.M.App. 2004), 96 P.3d 1186,1191-1192 (same); In re Tamara R. (Md.App. 2000), 764 A.2d 844,852-853 (same); McGovern v. McGovern (Ariz.App. 2001),33 P.3d 506, 511-512 (same); In re Custody of C.M. (Colo.App. 2002),74 P.3d 342, 345 (rejecting facial challenge to statute but finding statute unconstitutionally applied); In re Pensom (Tx.App. 2003), 126 S.W.3d 251, 256 (rejecting facial challenge to statute and remanding for constitutional application); Crafton v.Gibson (Ind.App. 2001), 752 N.E.2d 78, 96-97 (rejecting facial challenge to statute and remanding for constitutional application); In re Hertz (N.Y.App. 2002), 738 N.Y.S.2d 62, 65
(rejecting facial challenge); In re Davis (N.Y.Fam.Ct. 2001),725 N.Y.S.2d 812, 813-814 (rejecting facial challenge); Wood v.Wood (La.App. 2002), 835 So.2d 568, 574-575 (finding statute unconstitutionally applied); cf. In re Marriage of James
(Cal.App. 2003), 114 Cal.App.4th 68, 75 (applying Troxel to stepparent visitation statute and rejecting facial challenge to statute but finding statute unconstitutionally applied).
 {¶ 22} Generally speaking, the cases cited above all involved statutes which, like R.C. 3109.12 and the statute at issue inTroxel, allowed a trial court to order visitation upon a showing that visitation was in the child's best interest. The courts that declared their statutes facially constitutional interpreted them to require, among other things, that a trial court (1) grant some special weight to a fit parent's decision regarding visitation, (2) apply a rebuttable presumption that a fit parent acts in the best interest of the child, and/or (3) impose the burden on the grandparent seeking visitation to prove that visitation is in the child's best interest.
 {¶ 23} Ohio's visitation statute allows a trial court to grant visitation to a grandparent only if it determines that visitation is in the child's best interest. It is clear that R.C.3109.12 places the burden of proof on the party seeking visitation. However, unlike the Washington statute at issue inTroxel which contained no express reference to the parents' wishes as a factor to be considered, R.C. 3109.12 expressly identifies the parents' wishes and concerns regarding visitation as a factor the trial court must consider in making its determination. R.C. 3109.051(D)(15). Although the trial court can consider any factor it deems relevant, consideration of the parent's wishes regarding the requested visitation is mandatory. In light of Troxel, we interpret this provision to require the trial court to give special weight to that factor in making the visitation determination. So interpreted, R.C. 3109.12 does create, in essence, a presumption that a fit parent acts in the best interest of the child. We reach this conclusion even though the statute also identifies other factors that the trial court must consider. We further point out that Justice O'Connor noted in the plurality opinion in Troxel that the Washington Supreme Court could have narrowly interpreted its own statute but chose not to. Troxel, at 67.
 {¶ 24} Our interpretation of R.C. 3109.12 is consistent with the well-established principle in Ohio that statutes are to be liberally construed to save them from constitutional infirmities.Collier, at 269. This interpretation is also in accord with the majority of decisions from other states which have analyzed similar visitation statutes and declared them facially constitutional after interpreting them in light of Troxel. So interpreted, R.C. 3109.12 protects a fit parent's fundamental right to make decisions concerning the care, custody, and control of their children and insures that a fit parent's decision will not be disregarded merely because a trial judge disagrees with that decision. Therefore, R.C. 3109.12 is not unconstitutional on its face.
 {¶ 25} Next, appellant argues that R.C. 3109.12 was unconstitutionally applied to her when the trial court failed to give any special weight to her wishes regarding visitation. An "as applied" challenge asserts that a statute is unconstitutional as applied to the challenger's particular conduct. Meyer, at ¶ 31. The practical effect of holding a statute unconstitutional "as applied" is to prevent its future application in a similar context, but not to render it utterly inoperative. Yajnik v.Akron Dept. of Health, 101 Ohio St.3d 106, 2004-Ohio-357, at ¶14.
 {¶ 26} After considering the factors required by the statute, the trial court found that visitation with Mrs. Hammonds was in Shanise's best interest. Significantly, because appellant did not appear at the hearing, she did not express her wishes concerning Shanise's visitation with her grandmother. R.C. 3109.051(D)(15). However, Mrs. Hammonds testified that appellant never expressed any concern about her spending time with Shanise.
 {¶ 27} Although the trial court may have been aware that appellant opposed Mrs. Hammonds' visitation request in some manner, it could not give appellant's wishes any special weight or deference because there was no evidence of appellant's wishes. Based upon Mrs. Hammonds' testimony alone, the trial court determined that visitation with Shanise one weekend per month was in Shanise's best interest. Under these circumstances, we cannot conclude that R.C. 3109.12 is unconstitutional as applied to appellant in this case. However, R.C. 3109.12 may be vulnerable to an as-applied constitutional challenge in another case where there is evidence of the parent's wishes if the trial court failed to grant special weight to a fit parent's visitation decision or failed to apply a rebuttable presumption that a fit parent acts in the best interest of the child. E.g., In reFraizer, Hocking App. No. 02CA8, 2003-Ohio-1087, at ¶ 27 (reversing and remanding visitation ruling when trial court expressly did not afford parent's decision any special weight);Oliver v. Feldner, 149 Ohio App.3d 114, 2002-Ohio-3209
(reversing trial court's grant of visitation when trial court substituted its own judgment as to child's best interest and did not give any weight to parent's wishes).
 {¶ 28} In conclusion, we find that the trial court did not abuse its discretion by denying appellant's request for a continuance. We further find that R.C. 3109.12 is not unconstitutional on its face and not unconstitutional as applied in this case. Accordingly, appellant's first and second assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
Bowman and Bryant, JJ., concur.
[1] Mr. Hammonds was not involved in this matter as he failed to respond to the trial court's attempts to notify him of these proceedings.
[2] Appellant has another child, Shyquan, who is allegedly also Mr. Hammonds' child. For reasons not relevant here, Mrs. Hammonds did not request visitation with Shyquan.
[3] Justice O'Connor was joined by Chief Justice Rehnquist, Justice Ginsburg and Justice Breyer. Justice Souter, concurring in judgment, would have simply affirmed the state supreme court's decision striking down the statute as facially unconstitutional. Justice Thomas, also concurring in judgment, agreed with the pluarlity's recognition of a fundamental right of parents to direct the upbringing of their children but would have applied a strict scrutiny review to strike down the state statute. The three dissenting justices, Stevens, Scalia, and Kennedy, each dissented on different grounds.