Matter of Cocose v Diane B. (2005 NY Slip Op 51203(U))

[*1]

Matter of Cocose v Diane B.

2005 NY Slip Op 51203(U)

Decided on July 22, 2005

Family Court, Ulster County

Nussbaum, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 22, 2005

Family Court, Ulster County
In the Matter of Marian B. Cocose, o/b/o Michael M., Jr., Petitioner,
against
Diane B., Anthony B. and Ulster County Department of Social Services, Respondents.
V-4205-04

Marian B. Cocose,
Petitioner/Law Guardian for Michael M., Jr.
Dyan and Anthony B.,
Respondents
Keri E. Savona, Esq.
Ulster County Department of Social Services
Colette A. VanDerbeck, Esq.
Law Guardian for Sandra B.

Steven Nussbaum, J.
This is a proceeding for visitation between two siblings who were found to have been abused and neglected by the parents. The children, along with three other siblings, were removed from the home of their biological parents in August, 1999. The parental rights of the [*2]father were terminated, and the mother surrendered her rights to their five children who were freed for adoption in November, 2001. Two of the children have been adopted, two of the children remain in the custody of the Ulster County Department of Social Services, and the oldest child, upon turning eighteen, signed himself out of care and returned to his natural mother.
 Marian B. Cocose, Law Guardian for one of these children, Michael (d/o/b 5/30/91), has filed an Order to Show Cause in the above captioned matter, seeking sibling visitation between Michael and his sister, Sandra (d/o/b 9/10/93), now adopted by Respondents B. [hereinafter "adoptive parents"]. This proceeding is commenced pursuant to §71 of the Domestic Relations Law and §651(b) of the Family Court Act. At the time of Sandra's adoption proceeding, there was no provision concerning sibling visitation. Michael, who has not yet been adopted, is in the custody of the Department of Social Services.
The Petition asserts that since the adoption of Sandra in November, 2003, Respondent adoptive parents have refused to permit sibling visitation or even communication between the two children. According to Ms. Cocose, such refusal is contrary to the best interests of both Michael and Sandra. On May 12, 2005, Colette A. VanDerbeck, Esq., Law Guardian for Sandra, moved for an order dismissing this action and, in the alternative, for summary judgment. The motion was returnable on July 12, 2005.
Submissions made and considered in this matter were Affidavits of the adoptive parents, sworn to on April 20, 2005, and the exhibits attached to them; Affidavit of Colette A. VanDerbeck, sworn to on May 12, 2005; Affirmation in Opposition of Marian B. Cocose, signed on June 15, 2005; Memorandum of Law submitted by Marian B. Cocose, signed on June 15, 2005; and Affirmation in Opposition of Keri E. Savona, Esq., Staff Attorney for the Ulster County Department of Services, signed on July 5, 2005. No papers were submitted by the adoptive parents except through Ms. VanDerbeck. No rebuttal papers were filed.
The affidavits of the adoptive parents, submitted in support of the motion to dismiss and for summary judgment, are virtually identical. They aver that they adopted Sandra in November, 2003 after knowing her since about August, 2002 and she having lived with them since February, 2003. They both assert that at least one unnamed person at the Department of Social Services had advised them that after they adopted Sandra, sibling visits would end and they were under no obligation to continue them. According to them, they were concerned that visits with Michael had a negative impact on Sandra. After visits Sandra would ask them why Michael acted the way he did, "hitting her, putting snot on her, crying, vomiting, hugging her and hanging on her." The adoptive parents assert Sandra is doing very well now and no longer requires therapy. She is in special education classes and is doing well in school, even winning a Super Student Bumper Sticker award. They believe that Sandra will not benefit and, in fact, would suffer set-backs if sibling visitation were to occur.
It is the position of both adoptive parents and Sandra's Law Guardian that Sandra's parents have the right to refuse visitation between the child and her brother Michael. Relying on the United States Supreme Court decision in Troxel v. Granville, 530 U.S. 57, 147 L.Ed. 2d 49, 120 S. Ct. 2054 (2000), it is argued that the constitutional rights of the parents must prevail and the motion be dismissed. According to the movant, since Michael has not lived with Sandra since their removal from their birth parents' home in 1997, their contact is minimal and insufficient to establish standing under DRL §71 in this visitation matter. It also is argued that if [*3]visitation were ordered it would have a chilling effect on future adoptions.
Sandra's Law Guardian, in her affidavit in support of the motion, added that at the time of the adoption of Sandra by Respondents B. in November, 2003, neither the Department of Social Services nor Michael made any demand for visitation. She noted the decision of Judge Mary M. Work of October, 9, 2001, that set forth the harsh effects of the abuse and neglect these children suffered, including sexual, physical, and emotional abuse but no copy of the decision was annexed to her moving papers. Reference was made to reports in the court files indicating that visits had to be terminated early because of Michael's behavior, but no specifics or copies were provided. Sandra's Law Guardian contends that the petition should be dismissed for failure to state a cause of action and that the Court lacks subject matter jurisdiction. She further seeks summary judgment as she contends no factual issues exist as neither of the adoptive parents nor Sandra desire visitation to occur between the brother and sister.
Ms. Cocose, in opposition to the motion, asserts that since the children were placed in the custody of the Department of Social Services until November, 2003, when Sandra was adopted, Michael, Sandra, and their other siblings visited with each other on a monthly basis. They visited until Michel was 12 and Sandra was 10. Given the consistency of their contact up until the time of the adoption, standing, according to Ms. Cocose, exists. Michael's Law Guardian further claims that any difficulties which arose during visitation were not due to the actions of Michael and that the records of the Court do not support the claims of Respondent adoptive parents. She acknowledges that both of these children have special needs requiring significant attention and emotional support. In her affirmation, Ms. Cocose refers to reports from a caseworker and a psychologist for Michael strongly favoring sibling visitation.
The Department of Social Services, in opposition to the motion, noted that the children and their other three siblings, enjoyed consistent visitation with each other, even though not placed in the same foster homes. The Department agrees with Ms. Cocose that there is standing to maintain the petition and that the motions should be denied.
MOTION TO DISMISS
Sandra's Law Guardian has moved to dismiss the proceeding on the grounds that the petition fails to state a cause of action and the Court lacks jurisdiction over the subject matter in accordance with CPLR §3211)(a)(2) & (7). She argues that pursuant to Troxel v. Granville, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed.2d 49 (2000), the adoptive parents have a Fourteenth Amendment right to determine who Sandra should see. As neither they nor Sandra wish the child to visit with her brother Michael, their decision should not be challenged. It is asserted in the moving papers that the children have not resided together for over five years, had limited contact until November, 2003, and have not seen each other since Sandra's adoption. Given the limited contact, it is argued, the parents' decision to deny sibling visitation is proper.
Ms. VanDerbeck further argues that the plain language of DRL §117 results in the severance of sibling visitation after adoption. The statute provides in relevant part that "after the making of an order of adoption . . . adopted children. . . . are strangers to any birth relatives." She argues that since siblings are birth relatives, once Sandra was adopted, her four other siblings became strangers to her. Because the order of adoption did not provide for sibling visitation, the opportunity to provide for it has passed. She finally asserts that were the Court to order sibling visitation at this time, after the adoption had been completed, it would have a chilling affect on [*4]future adoptions from the Department of Social Services.
Ms. Cocose, in opposition, argues that the Family Court has subject matter jurisdiction of this proceeding pursuant to FCA §651 and a cause of action is stated pursuant to DRL §71. The Department of Social Services also opposes the dismissal of this proceeding, noting that for purposes of this motion to dismiss, the petitioner is entitled to every favorable inference that might be drawn. Although DRL §71 does not explicitly provide for sibling visitation after adoption, precedent set by case law has found that post-adoptive visitation is permissible pursuant to said statute.
The Court's inquiry on a motion to dismiss is limited to ascertaining whether the pleadings state a cause of action as opposed to whether there is evidentiary support for the petition. The Court is to give the petition a liberal construction, take the allegations of the pleadings as true and provide petitioner the benefit of every possible inference. EBC I, Inc. v. Goldman Sachs & Co., ___ NY 3rd ____, ___ NYS2d ___, 205 NY LEXIS 1178 (June 7th, 2005); Goshen v. Mut. Life Ins. Co. Of New York, 98 NY2d 314, 326, 744 NE2d 1190, 746 NYS2d 858 (2002). The petition must be construed in the light most favorable to petitioner. Scott v. Scott, 215 AD2d 893, 626 NYS2d 600 (3d Dept 1995); In re Theresa "BB", 130 AD2d 834, 835, NYS2d 155, 156 (3d Dept 1987); Holly v. Pennysaver Corp., 98 AD2d 570, 471 NYS2d 611 (2d Dept 1984).
In Troxel v. Granville, 520 U.S. 570 (2000), the fundamental right of parents to make child rearing decisions concerning their children free of judicial intervention, except in certain circumstances, was upheld when Washington State's grandparent visitation statute was challenged. That state's statute which enabled any non-parent to petition for visitation with a child was found unconstitutional as it was overly broad and infringed on the fundamental right of a parent to make a decision about the care, custody and control of the parent's child. This constituted a violation of the parents' Fourteenth Amendment substantive due process rights.
Pursuant to Troxel, a visitation statute must meet two standards: (1) The statute must not be overly broad; and (2) the court's interpretation of the statute must require a presumption that a fit parent acts in the best interests of his or her child. "Special weight" is to be accorded the determination of the parents. Troxel v. Granville, 530 U.S. at 70, 120 S, Ct. at 2061-62, 147 L. Ed.2d at 58-59; Hertz v. Hertz, 291 AD2d 91, 84, 783 NYS2d 62, 65 (2d Dept 2001); Rachel S. v. Annette R., 1 Misc 3d 760, 766 NYS2d 307 (Kings County Fam. Ct. 2003). The right to make parental decisions, however, is not unfettered or absolute. See Davis v. Davis, 188 Misc2d 81, 725 NYS2d 812 (Ostego County Fam. Ct. 2001).
Under New York law, there are only two classes of individuals, other than their parents, who may seek visitation with children. They are, pursuant to statute, siblings of the whole and half-blood, and grandparents. Perry-Rogers v. Fasano, 276 AD2d 67, 715 NYS2d 19 (1st Dept. 2000), leave to app. denied 96 NY2d 712, 728 NYS2d 439 (2001). Section 71 of the Domestic Relations Law, which authorizes sibling visitation, provides:
Where circumstances show that conditions exist which equity would see fit to intervene, a brother or sister or, if he or she be a minor, a proper person on his or her behalf of a child, whether by half or whole blood, may apply to the supreme court by commencing a special proceeding or for a writ of habeas corpus to have such child brought before such court, or may apply to the family court pursuant to subdivision (b) of section six hundred fifty-one of the [*5]family court act; and on the return thereof, the court, by order, after due notice to the parent or any other person or party having the care, custody, and control of such child, to be given in such manner as the court shall prescribe, may make such directions as the best interest of the child may require, for visitation rights for such brother or sister in respect to such child.
DRL §71, as is the grandparent visitation statute, DRL §72, is strictly construed. See, e.g., Perry-Rogers v. Fasano, 276 AD2d 67, 715 NYS2d 19 (1st Dept. 2000)(child who shared womb of another child implanted in mother by mistake had no standing under DRL §71to seek visitation with "gestational sibling"); David M. v. Lisa M., 207 AD2d 623, 615 NYS2d 783 (3d Dept. 1994) (great-grandparent visitation not covered by DRL§72). The statutory provision, therefore, comports with the Troxel requirement that the statute not be overly broad.
The language of section 71 tracks that of the grandparent visitation statute, each providing "where circumstances show that conditions exist which equity would see fit to intervene." New York courts examine both the nature and basis of the parents' objection to visitation as well as the nature and extent of the sibling relationship. See Morgan v. Grzesik, 287 AD2d 150, 732 NYS2d 733 (4th Dept 2001). Special weight is given to the parents' decision.
The New York Court of Appeals found grandparents could seek postadoptive visitation prior to Troxel. People ex rel. Sibley, 54 NY2d 320, 429 NE2d 1049, 445 NYS2d 420 (1981). That Court has not yet issued an opinion determining the constitutionality of sibling or grandparent visitation statutes in light of the Supreme Court's decision.
In Hatch on Behalf of Angela J. v. Cortland County Dept. Of Social Servs., 199 AD2d 765, 605 NYS2d 428 (3rd Dept 1993), the Appellate Court found that DRL §71 provides "the courts with authority to grant postadoption visitation rights." The court explicitly noted that "the severance by adoption of the existing emotional ties between children and their . . . siblings and grandparents may be harmful to the children and that it may be beneficial to provide for visitation after adoption." Id. at 762, 605 NYS2d at 428, citing to Nathan, Visitation After Adoption: In the Best Interests of the Child, 59 NYU L Rev 633 (1984). But such visitation is not automatic. The Court will look to see if there was meaningful contact between the siblings prior to the commencement of the proceeding. Visitation was denied in Hatch between the child Angela who was born over one year after her two siblings had been placed in the custody of the Department of Social Service. Her birth parents had extremely limited visitation with her siblings and that visitation was terminated when Angela was 19 months old and the siblings four or less years old. The two older children, who had been removed from their parents' care when they were very young, were adopted and Angela's law guardian sought sibling visitation. Noting that the children never had the opportunity to develop any affectionate relations with each other, it was found that postadoption visitation would not be in the best interests of any of these children. See also Matter of Justin, 215A.D.2d 180, 626 NYS2d 479 (1st Dept 1995), appeal denied, 86 NY2d 709 (1995 )(absence of prior relationship between siblings militates against ordering visitation); Keenan R. V. Julie L., 3 Misc 3d 819, 775 NYS2d 468 (NY County Fam. Ct. 2004) (14 year old denied postadoption sibling visitation with 8 year old sisters where only contact since placement had been one visitation in 1999).
Hatch differs from the facts of this case where the children resided together for six years and had visitation up until the adoption of Sandra. As the parties do not agree on the quality and [*6]quantity of visitation, the issue whether there was meaningful contact is a matter to be determined at fact-finding. Moreover, Sandra and Michael, unlike the children in Hatch, are old enough to remember living with and other contact with their biological family and consideration must be given as to whether a deprivation of sibling visitation may have lasting effects on the children's development. As noted in Matter of Lovell Raeshawn McC., 308 AD2d 589, 591, 764 NYS2d 714, 716 (2d Dept 2001), ultimately "the court should determine whether such visitation is in the child's best interest."
Postadoption sibling visitation was ordered in Adoption of Anthony, 113 Misc2d 26, 448 NYS2d 377 (Bronx County Fam. Ct. 1982), despite the fact that the child had never resided with the siblings who had been adopted by another family before he came into placement. Despite this separation of siblings, they were able to maintain an ongoing relationship with each other through visitation and telephone contact. All parties were in agreement that continued sibling visitation was in Anthony's best interest after his adoption, but the Department of Social Services wanted an informal visitation arrangement rather than one memorialized by an order. The Family Court disagreed and issued an order directing continuing contact between the subject child and his siblings for the purpose of insuring that the child's interests would be protected in the event his adoptive parents changed their minds at a future time. Although decided prior to Troxel v. Granville, supra , the importance of the continuity of a relationship between siblings is highlighted by this case.
There is clearly a dispute in this case as to the nature and extent of visitation between the siblings following their removal from their biological parents' home in 1999, although there is no dispute that they resided together before that date. There also is a dispute as to what is in the best interest of Sandra with regards to such visitation. In Matter of Gregston v. Amatulli, 273 AD2d 384, 709 NYS2d 599 (2d Dept. 2000 ), the Appellate Court held that when a factual dispute exists as to the best interests of the children, a hearing is mandated.
Sandra's Law Guardian argues that if postadoption sibling visitation were ordered by this Court, it may have a chilling effect on future adoptions through the Department of Social Services, especially of children with special needs such as the siblings in this case. The case law discussed above and recent amendments to the Family Court Act and Social Services Law, passed by the State Senate and Assembly and awaiting signature by the Governor, however, renders this argument unpersuasive. An adoptive parent, pursuant to DRL §117(1)( c) has all the rights and duties of a parent. Just as a biological parent could be required to comply with an order directing sibling or grandparent visitation issued pursuant to DRL §§71 & 72, so may an adoptive parent.
An order of adoption does not erase the emotional bonds children may have with their birth family, especially when siblings from an abusive home are split apart by the adoption. They have a shared history and may have been each other's support system during the difficult years with their biological parents, a source of companionship, intimacy and nurturing for each other. As noted by one court in a different jurisdiction:
Surely, nothing can equal or replace either the emotional and biological bonds which exist between siblings, or the memories of trials and tribulations endured together, brotherly or sisterly quarrels and reconciliations, and the sharing of secrets, fears and dreams. To be able to establish and nurture such a relationship is, without question, a natural, inalienable right which is [*7]bestowed upon one merely by virtue of birth into the same family.
L. v. G., 491 A.2d 215, 218 (N.J. Super. Ct. Ch. Div. 1985). While in the ideal world these two siblings might have been placed together and eventually adopted into the same family, this was not the case here. There were five siblings, each with special needs and emotional issues removed from their home, almost assuredly making their placement in the same home a virtual impossibility.
This philosophy is reflected in the 2005 Permanency Legislation currently awaiting signature by the Governor which includes modifications to to Social Service Law §§383-c and 384. Conditional surrenders may now provide terms and conditions for communication with or contact between the adopted child and said child's "biological or half-siblings." A sibling or half-sibling fourteen years of age or older would be required to consent in writing before such a provision would be enforceable. 2005 NY Senate-Assembly S5805, A7225-A
According to undisputed statements from Sandra's Law Guardian, it does not appear as if the issue of sibling visitation was raised at the time of the child's adoption. Michael, however, would not have been a party to the adoption proceeding, and his Law Guardian would not have received notice of it. The recent amendments will, hopefully, help resolve this issue in connection with future adoptions. But to penalize these children from possibly maintaining their connection and emotional ties because of a failure to raise the issue at the time of the adoption, under the circumstances of this case, would be inappropriate.
Based upon the motion papers and especially in light of the impact this Court's decision will have on the emotional development of these children, a hearing is a necessity. The application of Ms. Cocose for sibling visitation sets forth a cause of action, and this Court has subject matter jurisdiction. Accordingly, the motion to dismiss is denied.
SUMMARY JUDGMENT
To prevail on a summary judgment motion, the proponent is required to make a prima facie showing of entitlement to "judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact." Winegrad v. New York Univ. Med. Ctr., 64 NY2d 851, 853, 487 NYS2d 316 (1985). The motion must be denied if there is a failure to make the prima facie showing, regardless of the opposing paper's sufficiency. Id. at 853. If the showing is made, the burden then shifts to the party opposing the motion for summary judgment, requiring the production of evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial or fact-finding in the action. Zuckerman v. City of New York, 49 NY2d 557, 562, 404 NE2d 718, 729, 427 NYS2d 590, 597-98 (1980).
Summary judgment, as a drastic remedy, should only be granted in cases where there are "no material facts disputed sufficiently to warrant a trial." ; La Bier v. La Bier, 291 AD2d 730, 732, 738 NYS2d 132, 134 (3d Dept 2002) quoting Matter of Patricia YY. v. Albany County Dept. of Social Servs., 238 AD2d 672, 673, 656 NYS2d 414, 415 (3d Dept 1997). In considering a motion for summary judgment, the court's role is issue finding as opposed to issue determination, and the existence of conflicting issues of fact mandates the dismissal of the motion. Werfel v. Zivnostenska Banka, 287 NY 91 (1941); La Bier v. La Bier, supra . The facts are to be construed in a light most favorable to the non-moving party. Weiss v. Garfield, [*8]21 AD2d 156, 249 NYS2d 458 (3rd Dept 1964). Where different inferences may be reasonably drawn from the facts themselves undisputed, a motion for summary judgment must be denied. Supan v. Michelfeld, 97 AD2d 755, 756, 468 NYS2d 384 (2d Dept 1983). If there is any significant doubt whether material issues of fact exist or there is even arguably such an issue, summary judgment is to be denied. Bulger v. Tri-Town Agency, Inc., 148 AD2d 44, 543 NYS2d 217 (3d Dept 1989), app. dism. 75 NY2d 808, 552 NYS2d 110 (1990). And the motion should be denied if a key fact in issue is within the exclusive knowledge of the movant. Krupp v. Aetna Life & Cas. Co., 103 AD2d 252, 479 NYS2d 992 (2d Dept 1984).
This Court is bound to decide a summary judgment motion in accordance with CPLR §3212(b). The motion may be utilized in custody and visitation cases pursuant to Family Court Act §165(a) which permits its utilization "to the extent . . .appropriate to the proceedings involved." La Bier v. La Bier, 291 AD2d at 732, 738 NYS2d at 134.
The moving party must first come forward with admissible evidence to support its claim of entitlement to summary judgment. Affidavits by persons having first hand knowledge of the facts and reciting material facts meet this requirement. Were the movant to satisfy their obligation, "the party opposing the motion must demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action or tender an acceptable excuse for his failure to do so, and the submission of a hearsay affirmation by counsel alone does not satisfy this requirement." Zuckerman v. City of New York, 49 NY2d at 560, 404 NE2d at 718, 427 NYS2d at 596. An affirmation by an attorney who does not have personal knowledge of the facts "is without evidentiary value and thus unavailing." Id. at 563, 404 NE2d at 721, 427 NYS2d at598.
These are the undisputed facts in this matter. On August 12, 1999, Michael, Sandra and their three other siblings were removed from the case and custody of their biological parents and placed in the custody of Ulster County Department of Social Services. In November, 2000, a petition was filed against the biological father, alleging that he had permanently neglected his children. In March, 2001, the biological mother signed a judicial surrender, and on December 19, 2001 the Court issued an order of disposition finding all of the children to be permanently neglected and terminating the parental rights of the biological father. In November, 2003, Sandra was adopted and visitation between Sandra and her other siblings ceased.
Both Ms. Cocose and the Department of Social Services contend that visitation between the children occurred on a consistent basis from the time of their removal until Sandra was adopted. Ms. VanDerbeck and the adoptive parents assert that the visitation was less consistent and had been cancelled at times due to Michael's behavior. There is insufficient proof before this Court to reach a determination as to the meaningfulness of the visitation between the children. And while it would be tempting to use the documentation present in the court's five volume file consisting of thousands of pages, legal precedent has established such an action by the court is inappropriate. La Bier v. La Bier, 291 AD2d at 732, 738 NYS2d at 134 (Family Court cannot search the entire case record and go beyond statutory standard of review in determining summary judgment motion).
After reviewing the parties' submissions, the Court cannot say that the difficulties at the visitations were due to Michael's behavior. References to any problems in one document provided by movant indicate the difficulty at visitation were caused primarily by the actions of [*9]Joshua, the oldest sibling of the children.
Additionally, much of the relevant information in the affidavits and affirmations supplied were based upon hearsay and therefore have no evidentiary value with respect to a motion for summary judgment. Sandra's reports of difficulties with Michael to her adoptive parents were not supported by any other evidence. While a letter from Sandra's former therapist purports to provide a basis to deny visitation, the mere fact Sandra does not speak of her biological family members does not support such a result. Her failure to speak about her biological family leads to other reasonable inferences that would support a determination that she has a need for sibling visitation. The unsworn letter also is insufficient to support a motion for summary judgment and contains only conclusory statements without setting forth facts sufficient to support her opinion that visitation between the siblings is not in the best interest of Sandra. Matter of Patricia YY. V. Albany County Dept of Social Servs., 238 AD2d at 674, 656 NYS2d at 416. The motion for summary judgment is denied.
CONCLUSION
Both Michael and Sandra have been the victims of abuse and neglect and have been separated as a result of the actions of their biological parents and by the State. As stated by Justice Stevens in his Troxel dissent, sibling and grandparent cases are not just a struggle between parents and the State "over who has final authority to determine what is in a child's best interests. There is at a minimum a third individual, whose interests are implicated in every case to which the statute applies the child." Troxel v. Granville, 530 U.S. at 86. The submissions in this matter establish that a fact-finding is necessary before the Court can make any decision in this complicated matter.
Accordingly, the motion to dismiss and for summary judgment is denied. A conference is scheduled for August 24, 2005 at 9:00 a.m., and fact-finding is set for October 11, 2005 at 10:00 a.m.
This constitutes the decision and order of this court.
Dated:July 22, 2005
Kingston, New York
E N T E R:
________________________________
HON. STEVEN NUSSBAUM, J.F.C.
[*10]
PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE LAW GUARDIAN UPON THE APPELLANT, WHICHEVER IS EARLIEST.